David S. BANTON, Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 2–884–A–267PS.

Court of Appeals of Indiana, Second District.

March 26, 1985.

David S. Banton, pro se.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

David S. Banton (Banton) appeals [1] from two judgments convicting him of first degree burglary [2] and conspiracy to commit a felony,[3] claiming the court erred by denying his motion to disqualify the prosecutor, by denying his motion for change of venue from the judge, by denying his motion for discharge, by denying his motion to compel election, and by rejecting a plea agreement. Banton also asserts the court committed fundamental error by denying his belated motion to correct error and by accepting the State's response to that motion.

We reverse.

1. Ind. Rules of Procedure, Post-Conviction Rule 2.

2. Ind. Code Ann. 35–13–4–4 (Burns 1975).

## FACTS

On September 23, 1975, William Harrison (Harrison), a police informant, and Donald Chadwell (Chadwell) broke into the Tippecanoe County home of the Dana-Bashian family and absconded with a coin collection. This perfidious undertaking resulted from instructions given and information provided by Banton. They then delivered the coin collection to Banton's home, where he paid them for their services. This same duo had executed a similar operation the previous evening at the home of Henry Silver (Silver). Chadwell was arrested after leaving Banton's house on September 26, 1975. Banton's home was searched later the same evening or in the early morning hours of September 27, 1975, resulting in the recovery of the booty from the Dana-Bashian and Silver burglaries.

Banton and Chadwell were both charged, on September 29, 1975, with two counts each of burglary and conspiracy to commit burglary, docketed under cause number C–4030 in the Tippecanoe Circuit Court, the same cause which is the subject of this appeal.

Beginning October 27, 1975, the State was represented in this case by a special prosecuting attorney; although, the reason for this arrangement is unclear from the record. Chadwell was represented by the office of the Tippecanoe County Public Defender, John Meyers (Meyers). On November 26, 1975, Meyers effected a plea agreement for Chadwell, which resulted in the dismissal of the burglary and conspiracy charges in this cause, C–4030, before the Tippecanoe Circuit Court, an executed sentence on a charge pending before the Tippecanoe Superior Court, transactional immunity, and an agreement to testify on behalf of the State when required. *Record* at 477.

The record indicates Banton was not arrested until December 17, 1975, and the first of several private counsel entered an appearance for Banton the next day.

3. IC 35–1–111–1 (1975).

Counsel filed a plea agreement on Banton's behalf on February 11, 1976, *record* at 62–63, and a sentencing date of March 12, 1976 was set. Banton, however, failed to appear on the appointed date and did not reappear until April 30, 1979, after he was rearrested. Also on April 30, 1979, the special prosecutor in this cause withdrew his appearance, and Meyers, who had never represented Banton, entered his appearance on behalf of the State as the Tippecanoe County Prosecutor.

On May 14, 1979, a public defender was appointed to represent Banton, even though his private counsel indicated a willingness to continue representation. Also on that date, the court rejected the plea agreement, which predated Banton's failure to appear, and entered pleas of not guilty on Banton's behalf to all charges. *Record* at 74.

Banton's counsel filed a verified motion for change of venue from the judge on June 28, 1979, but following an August 3, 1979 hearing the motion was denied. On December 18, 1979, Banton's trial counsel, Nile Stanton (Stanton), entered his appearance.

Banton orally moved the court to disqualify Meyers as prosecutor on March 20, 1980, and filed a written motion to the same effect on March 26, 1980. After the State responded on November 25, 1980, the court overruled Banton's motion.

Trial began with jury selection on June 29, 1981. The next morning, June 30, 1981, Banton moved for discharge alleging a denial of his right to speedy trial. After conducting a hearing, the court overruled Banton's motion; likewise, Banton's motion to compel the State to elect between the burglary and the conspiracy charges was, after a hearing, denied. Banton's motion in limine relative to a custodial statement was granted. However, his attempt to exclude Chadwell's testimony was rejected.

During the trial's second day, July 1, 1981, Banton sought to exclude Chadwell's testimony when the State indicated he would be called as a witness. At a hearing, both Chadwell and Meyers testified as to their earlier attorney-client relationship when Meyers, as Tippecanoe County Public Defender, represented Chadwell in this case. Chadwell stated he had discussed Banton's activities with Meyers and had provided Meyers information he would not have provided the prosecuting attorney. *Record* at 446. Meyers testified that he could identify Banton on sight and that, during Meyers's representation of Chadwell, Banton had spoken with him over the phone to indicate Chadwell was innocent. Meyers contended this was the extent of his contact with Banton. *Record* at 480–82. Meyers admitted that, as Tippecanoe County Prosecutor, he was in overall charge of and worked on this case despite his recusal in favor of one of his deputies after the denial of Banton's motion to disqualify him as prosecutor. *Record* at 480. Banton's objection was overruled, and Chadwell proceeded to testify on behalf of the State. He was subject to cross-examination by Banton's counsel. On July 2, 1981, the trial concluded. The jury returned verdicts of guilty on the four counts against Banton. Banton remained free on bond pending sentencing.

Banton's sentencing was reset several times; however, on January 25, 1982, an arrest warrant was issued because of his failure to appear. Banton was again apprehended, and he was finally sentenced on December 22, 1982.

Banton filed his belated motion to correct error, pro se, on April 18, 1984. The State responded on July 23, 1984, and the trial court denied the motion that same day.

## ISSUE

Although Banton alleges numerous errors, one issue is dispositive:

> Did the court err by denying Banton's motion to disqualify Meyers?

## DECISION

PARTIES' CONTENTIONS—Banton's argument is that Meyers represented Chadwell, a codefendant in the same case concerning the same acts and set of facts and,

therefore, acquired vital information from Chadwell relating to Banton's defense.

In response, the State observes that Meyers, after the court denied Banton's motion to disqualify him, assigned this case to a deputy prosecutor which the State contends is sufficient under *Walker v. State* (1980), Ind.App., 401 N.E.2d 795. The State further argues that Banton did not object to other members of the prosecutor's office proceeding with the case, that Chadwell was extensively cross-examined about his relationship with Meyers, and that at no time did Meyers directly represent Banton.

CONCLUSION—Under the particular facts of this case, the court erred by not granting Banton's motion to disqualify Meyers from serving as the prosecutor.

■ It is fundamental that an attorney may not engage in conduct adverse to a client's interest. *See Wilson v. State* (1861), 16 Ind. 392; *Shuttleworth v. State* (1984), Ind.App., 469 N.E.2d 1210. Here, we address a corollary of that proposition: May an attorney who represented a codefendant *in the same matter* later prosecute the other codefendant on behalf of the State? Because of the unique circumstances of this case, the answer must be no. The factual underpinnings of the charges against Banton and the charges against Chadwell are indistinguishable.

■ The cases on this subject are bifurcated. The first approach is to declare a per se prohibition against such prosecution on the theory that an irreconcilable conflict of interest exists. *See Martin v. United States* (9th Cir. 1964), 335 F.2d 945. The second approach, apparently utilized by the majority of courts, is to assess the propriety of the representation on a case by case basis. This approach was used by the Nevada Supreme Court in *Collier v. Legakes* (1982), 98 Nev. 307, 646 P.2d 1219, when the court remanded the case to the trial court for a determination of the specific facts and circumstances of the individual case in order to determine the necessity of disqualification. Among the factors considered by courts which utilize a case by case methodology are whether the trials of the codefendants are separate proceedings, *Thoreson v. State* (1940), 69 Okl.Crim. 128, 100 P.2d 896, whether any harm accrues by allowing an attorney to be adverse to the interests of a client or former client, *State ex rel. Oldham v. Aulls* (1981), Fla.Dist.Ct. App., 408 So.2d 587, and whether allowing the prosecutor to proceed would entail a breach of a privileged communication. *Collier, supra.* *See generally* Annot., 31 A.L.R.3d 953 (1970); 63A Am.Jur.2d *Prosecuting Attorneys* § 31 (1984).

The only Indiana case touching upon this precise question is *Walker, supra,* at 796 in which Judge Garrard reviewed nationwide precedent and concluded that:

> "These cases have uniformly held that an attorney will not be permitted to assist in the prosecution of a criminal case if by reason of his professional relation with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith. On the other hand, an attorney who has merely represented a co-defendant in a separate proceeding is not precluded from assisting the prosecution on that basis alone."

(Footnotes omitted). However, the *Walker* case was not decided on that basis. The long-standing rule for prosecutorial disqualification was adopted by the supreme court in *State v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377, 1378:

> "The precepts of professional ethics forbid the participation of a lawyer in the prosecution of a criminal case if by reason of his professional relation with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith. Cannons 4, 5, and 6, Indiana Code of Professional Responsibility.

> The test, stated alternatively in many jurisdictions, is that *a lawyer must be disqualified if it is shown that the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client. This test must be*

*applied to the facts of each case* to determine whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith."

(Citations omitted) (emphasis supplied). *See also Wilson, supra; Walker, supra.* And, the court added the admonition that "[t]he public trust in the integrity of the judicial process requires us to resolve any serious doubt in favor of disqualification." *Tippecanoe County Court, supra,* at 1379.

The facts surrounding Meyers's representation of Chadwell and subsequent prosecution of Banton fall within the prohibition declared by the supreme court. The controversy in Banton's case is substantially related to the matter in which Meyers represented Chadwell; in fact, the controversy in the pending case is *exactly the same matter* in which Meyers represented Chadwell. The cause number is the same, the court is the same, and most important, the same set of facts are necessary to convict Banton as were necessary to achieve prosecution of Chadwell. Although Chadwell's plea bargain was effected before Banton's arrest, the trial of the two defendants was never separated. Indeed, Chadwell testified he told Meyers everything concerning the crimes alleged, including material he would not reveal to the prosecutor, when Meyers represented him as public defender. The prejudicial effect on Banton's case is readily apparent. The prosecution, via a previous relationship with the same case, knew the details of Banton's case because Chadwell's case was, in effect, Banton's case. Moreover, Meyers's purported recusal was ineffective to attenuate this prejudice. Meyers responded *affirmatively* when asked "have you participated at all in making any of the tactical decisions, or strategical decisions with respect to the present case pending against David Banton or even help to gather information or marshal information affecting this prosecution?" *Record* at 480. It would be a snare and a delusion to conclude that allowing Meyers to remain as prosecutor under these circumstances could result in anything other than an unfair advantage.

We reject the State's contention that Meyers's recusal in favor of one of his deputy prosecutors indicates sufficient compliance under the terms of *Walker, supra.* Meyers is *the* Tippecanoe County Prosecutor, and it is well settled that once the prosecuting attorney is disqualified, his whole office is disqualified from representing the State in a particular case. *See Tippecanoe County Court, supra; State ex rel. Goldsmith v. Superior Court* (1979), 270 Ind. 487, 386 N.E.2d 942. Meyers's recusal in favor of his deputy was pro forma at best.

We stress that we do not adopt a per se rule against a prosecutor appearing for the State in a cause when he has previously represented a *codefendant* of the accused. Rather, we have applied the same standard enunciated by our supreme court as to prior representation of the defendant now being prosecuted to the unique facts of this cause. Thus, the trial court erred by denying Banton's motion to disqualify Meyers.

Reversed and remanded for a new trial.

SULLIVAN and SHIELDS, JJ., concur.