STATE of Indiana, Appellant
(Plaintiff Below),

v.

Sean ROMERO a/k/a Sean German,
Appellee (Defendant Below).

No. 45A04–9002–CR–82.

Court of Appeals of Indiana,
Fourth District.

Nov. 27, 1990.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant.

CONOVER, Judge.

Plaintiff–Appellant the State of Indiana (State) appeals the acquittal of Defendant–Appellant Sean Romero a/k/a Sean German (Romero).

We affirm.

The State presents the following two issues for our review:

1. whether the trial court erred in allowing a former deputy prosecutor to represent Romero; and

2. whether the trial court erred in permitting an expert witness to testify concerning reconstructive memory.

■ In April, 1989, Romero was charged with murder and attempted murder in Lake County. After a jury trial, the jury was unable to reach a verdict and a mistrial was declared. The cause was reset by agreement of the parties. Shortly thereafter, Romero's original attorney withdrew his appearance and attorney Thomas Vanes (Vanes), a former Lake County prosecutor, entered his appearance on Romero's behalf. A second jury trial was held, after which Romero was found not guilty of both charges. The State now seeks appellate review on reserved questions of law pursuant to IND.CODE 35–38–4–2(4).[1]

■ The State first contends the trial court erred in permitting attorney Vanes, a deputy prosecutor during Romero's first trial, to represent Romero over objection by the State. The State maintains Vanes's representation presented, at least, the appearance of impropriety, if not a violation of the Rules of Professional Conduct.

The record demonstrates Vanes was a deputy prosecutor in Lake County during Romero's first trial. Upon retrial, Vanes entered his appearance on Romero's behalf. Vanes filed an affidavit concerning his participation in the case. The affidavit provides Vanes was consulted by another deputy prosecutor concerning the admissibility of certain items in Romero's case; however, Vanes was not informed of the name of the accused and did not obtain any confidential information regarding the case. In the affidavit, Vanes concludes his prior participation in the cause was not substantial as contemplated by Rule 1.11 of the Rules of Professional Conduct. Thereafter, during Romero's second trial, the State objected to Vanes's representation of Romero on

---

1. When a defendant has been acquitted and the State appeals a reserved question of law, only questions of law are considered by this Court. Though these questions are sometimes moot, our courts frequently permit such appeals as a way of furnishing guidance to trial courts in future cases. *State v. Goodrich* (1987), Ind., 504 N.E.2d 1023, 1024.

several occasions, however, such objections were overruled.

Ind. Rules of Professional Conduct, Rule 1.11 provides, in pertinent part:

Successive Government and Private Employment:

(a) Except as law may otherwise permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated *personally and substantially* as a public officer or employee unless the appropriate government agency consents after consultation.... ·

(d) As used in this Rule, the term "matter" includes:

(1) any judicial or other proceeding, application, request for a ruling or other determination, contract claim, controversy, investigation, charge, accusation, arrest or other particular matter involving [a] specific party or parties; and

(2) any other matter covered by the conflict of interest rules of the appropriate government agency.

(e) As used in this Rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public. (Emphasis supplied).

Our case law has interpreted and applied this rule. In *Matter of Brodeur* (1985), Ind., 479 N.E.2d 57, our supreme court observed:

After a lawyer leaves public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety ... the Respondent has violated Disciplinary Rule 9–101(B) of the *Code of Professional Responsibility for Attorneys at Law*.[2]

*Id.*, at 57. Moreover, it is commonly acknowledged an attorney contravenes our Rules of Professional Conduct when he represents a party in a controversy which is substantially related to a matter in which the attorney previously represented another client. *Matter of Zinman* (1983), Ind., 450 N.E.2d 1000, 1002.

Therefore, it is readily apparent the crux of the issue is whether Vanes participated "personally and substantially" in Romero's first prosecution. This is often termed the "substantial relationship" test. The genesis of the substantial relationship test is found in *State v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377, 1378, in which our supreme court stated:

... It is axiomatic that the conduct of all attorneys in this state, whether employed in the public or private sector, is governed by the Code of Professional Responsibility....[3] The test, stated alternatively in many jurisdictions, is that a lawyer must be disqualified if it is shown that the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client. This test must be applied to the facts of each case to determine whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith. (Citations omitted).

*Id.*, at 1378.

The substantial relationship test has since been interpreted and applied in several cases. In *Shuttleworth v. State* (1984), Ind.App., 469 N.E.2d 1210, 1217, we defined "related" as "being connected by rea-

---

**2.** Disciplinary Rule 9–101(B) preceded Prof. Cond.R. 1.11. Dr 9–101(B) provided:

A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

**3.** ˙ The Rules of Professional Conduct cover the same subject matter as the former Code of Professional Responsibility. There was no specific repeal of the Code of Professional Responsibility. The transition to the new rules was accomplished through an amendment to Admission and Discipline Rule 23, § 2. Through this amendment, the Rules of Professional Conduct became the grounds for discipline effective January 1, 1987.

son of an established or discoverable relationship." While we conceded a prosecuting attorney's prosecution of a defendant for nonsupport of his children was related to a prior proceeding in which the attorney represented defendant's wife in the dissolution of marriage action, we held the two cases were not "substantially" related. We found remoteness in time and lack of other evidence in the record dissipated any appearance of impropriety. *Id.*, at 1218. Thereafter, in *Banton v. State* (1985), Ind. App., 475 N.E.2d 1160, we held the trial court erred in refusing to disqualify an attorney who represented a codefendant in a criminal matter and later prosecuted the other codefendant. We held the controversy in both cases was exactly the same and the prejudicial effect was readily apparent. *Id.*, at 1164.

Most recently, in *Jaske v. State* (1990), Ind.App., 553 N.E.2d 181, *trans. denied,* we granted rehearing based, in part, on this issue. In our original opinion, cited at (1989), 539 N.E.2d 492, we held the trial court abused its discretion by denying the defendant's petition for a special prosecutor. The facts demonstrate Jaske was serving a life sentence for murder when he devised an escape plan involving the aid of mercenaries. After the plan was discovered, Jaske was convicted of conspiracy to commit escape. Prior to his conspiracy trial, Jaske petitioned the court for appointment of a special prosecutor because the Prosecuting Attorney previously represented Jaske in a petition for post-conviction relief on the original murder conviction. We held the trial court should have disqualified the prosecutor because proof of Jaske's lawful detention for murder was an element of the State's conspiracy case, thus satisfying the substantial relationship test. On rehearing, however, we held the record did not demonstrate the facts the attorney might have acquired during his prior representation of Jaske in the post-conviction proceeding were closely interwoven with the prosecution of the subsequent conspiracy charge. *Id.*, at 183. We held the relationship between the attorney's prior representation as defense counsel and his subsequent prosecution of Jaske for escape was

minimal at best, thus the trial court did not err. *Id.*, at 184.

Because no Indiana cases are directly on point with the facts of this case, we look further to other sources for the definition of "substantially related". The definition section of our Rules of Professional Conduct defines the term as follows:

"Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.

The American Bar Association has also commented on the term. In ABA Comm. on Ethics & Professional Responsibility, Formal Op. 342 (1975), the ABA defined "substantial responsibility" as used in DR 9–101(B), the predecessor to our current rule. The ABA stated:

'substantial responsibility' envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question.

The ABA stated the policy considerations underlying the rule are: (1) the treachery of switching sides; (2) the safeguarding of confidential governmental information from future use against the government; (3) the need to discourage government lawyers from handling particular assignments in such a way as to encourage their own future employment in regard to those particular matters after leaving government service; and (4) the professional benefit derived from avoiding the appearance of evil.

Working within this framework, we must conclude the trial court did not abuse its discretion by refusing to disqualify Vanes as defense counsel. Clearly, Vanes personally participated in the matter when he conferred with the other deputy prosecutor on the admissibility of certain evidence. However, Vanes's limited participation did not reach the level of substantial participation contemplated by Prof.Cond.R. 1.11. Clearly, Vanes bore no "substantial respon-

sibility" in the prosecution. *Brodeur, supra.* While it is true Romero's first and second trials were most certainly related since they constituted the same prosecution, we cannot conclude these matters were substantially related for purposes of disqualifying Vanes. He was not involved in Romero's first trial to any important, material degree. Comm. on Ethics & Professional Responsibility, Formal Op. 342. The policy considerations underlying the rule were not violated by Vanes's actions nor was there prejudicial impact to the State as we view the facts.

We find no error here.

■ The State next argues the trial court erred in admitting the testimony of an expert witness regarding reconstructive memory.[4] Dr. Jody Esper (Esper), an assistant professor of psychology at Valparaiso University with Masters and Doctorate degrees in psychology, was permitted to testify over the State's objection. The State asserts reconstructive memory has not gained general acceptance in the scientific community to which it belongs, thus any introduction of such evidence constitutes error.

■ It is well settled the determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse of discretion. *Wissman v. State* (1989), Ind., 540 N.E.2d 1209, 1212. To qualify as an expert, the subject matter must be related to some scientific field beyond the knowledge of the average lay person, and the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness's opinion or inference will aid the trier of fact. *Id.*

Here, the State does not dispute the subject matter is beyond the knowledge of the average lay person. Moreover, it does not dispute Esper's expertise in the area, but claims the subject matter is not an accepted scientific field so as to be admissible in court.

Generally, before the results of scientific tests are admissible, the proponent of the evidence must lay a proper foundation establishing the reliability of the procedure used. *Smith v. State* (1986), Ind.App., 502 N.E.2d 122, 124, *reh. denied, trans. denied.* In *Cornett v. State* (1983), Ind., 450 N.E.2d 498, 503, our supreme court adopted the standard to be used for the admission of novel scientific techniques, which was earlier enunciated in *Frye v. United States* (1923, D.C.Cir.), 293 F. 1013, 1014. In *Frye,* the court, dealing with the admission of polygraph evidence, held "that while courts are willing to admit expert testimony about a scientific principle or procedure, 'the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.'" *Cornett, supra,* at 503. Thus, the new scientific technique or procedure must have gained general acceptance in the scientific community because the trial court and jury should not, on a case by case basis, be called upon to resolve a conflict in the scientific community concerning the validity of new scientific process. *Id.*

The only testimony presented in the record is that of Dr. Esper. Thus, we must judge the validity of reconstructive memory as an accepted scientific principle based on her testimony standing alone. During her testimony, Esper described retrograde amnesia. She then described the process of reconstructive memory as a means of recovering the lost memories and the use of leading questions to aid the victim in this reconstruction process. She cited several studies as support for her testimony. Moreover, she testified reconstructive memory was first studied and named in the 1930's and has been extensively studied since approximately 1973. She testified it is now widely accepted and supported as a memory phenomenon. There is no evidence in the record contradicting these statements.

4. Reconstructive memory is the process of filling in the gaps in memory left after amnesia has occurred. (R. 250).

Under the circumstances, we find the proper foundational requirements were met. Evidence was adduced at trial demonstrating the area of reconstructive memory has gained general acceptance in the relevant scientific community. The trial court did not abuse its discretion in permitting Esper to testify.

Affirmed.

GARRARD, J., concurs.

CHEZEM, J., concurs in result with separate opinion.

CHEZEM, Judge, concurring.

I concur in result. I would have preferred that the trial court make a finding as to the degree Mr. Vanes participated in the defendant's first trial. There is a conflict between the prosecutor's version and the description by Mr. Vanes. Certainly, the whole situation appears to be on the edge of impropriety. Since we do not reweigh the evidence and there is evidence to support the trial court's decision to allow Mr. Vanes to represent the defendant, I feel constrained to concur in result.

I also concur in result as to the second issue. In the case at hand the evidence of the expert witness regarding reconstructive memory was properly admitted. However, the reliability of reconstructive memory is still unsettled. The admissibility of such testimony when adequately challenged is not settled today.