**Stephen A. JOHNSON, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 18S00–9412–CR–01157.**

Supreme Court of Indiana.

Dec. 20, 1996.

---

Linda M. Wagoner, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Christopher L. LaFuse, Office of Attorney General, Indianapolis, for Appellee.

DICKSON, Justice.

The defendant, Stephen A. Johnson, was convicted of the murder of Harry Dean Baker. He brings this direct appeal asserting claims of prosecutorial misconduct and ineffective assistance of trial counsel. We affirm the trial court.

### 1. *Prosecutorial Misconduct*

To support his contention of prosecutorial misconduct, the defendant asserts that conflicts of interest required the prosecutor's recusal and that the prosecutor generally engaged in a pattern of misconduct at trial.

Baker, a twenty-six year old electrical worker and resident of Delaware County,

disappeared in November of 1986. When the defendant was arrested in 1989 in connection with an unrelated burglary, he offered to provide information about the Baker murder in exchange for dismissal of the burglary counts. The State agreed, and the defendant implicated Vance Hiatt in the murder and directed the police to Baker's body. The police charged Hiatt with the murder, but the charges were dismissed when Hiatt's defense attorney, Richard Reed, demonstrated that Hiatt was out of state at the time of the charged murder. The sheriff subsequently received a letter from an Ohio prison inmate, Homer Meyers, formerly a co-worker with the defendant, stating that the defendant had admitted to killing Baker. Following a grand jury indictment in 1993, the defendant was tried and convicted in 1994. By the time of the indictment and jury trial, Richard Reed had become the Prosecuting Attorney for Delaware County.

The defendant first contends that he was denied due process of law and a fair trial by various conflicts of interest on the part of the prosecutor. We regroup and address the following[1] claims by the defendant: 1) Richard Reed formerly represented Hiatt and later served as Delaware County Prosecutor during the defendant's indictment and trial;[2] 2) Reed had a "vendetta" against the defendant. Brief of Appellant at 21; (3) the evidence against the defendant was circumstantial, it also implicated Hiatt, and an independent prosecutor other than Reed would not have prosecuted the defendant; and (4) Reed's former client, Hiatt, had initi-

---

1. The defendant urges various conflict of interest claims, but fails to support several of those assertions from the record as required by Appellate Rule 8.3. On review, this Court will not search the record to find grounds for reversal. *Hebel v. Conrail, Inc.*, 475 N.E.2d 652, 659 (Ind.1985). We therefore address only those claims properly supported.

2. At trial the State was solely represented by a J.A. Cummings, a deputy prosecutor, although Prosecutor Reed did actively participate at the sentencing hearing. Notwithstanding the State's claim of limited participation and the general rule that a conflict of interest of a deputy prosecutor will not necessarily disqualify the entire prosecutor's office, such a conflict of the county prosecutor will do so. *State ex rel. Goldsmith v.*

*Superior Court of Hancock County*, 270 Ind. 487, 386 N.E.2d 942 (1979). We note that the Indiana Professional Conduct Rule prohibiting a government lawyer from participating in a matter in which the lawyer participated personally and substantially while in private practice generally "does not disqualify other lawyers in the agency with which the lawyer in question has become associated." Final Comment, Ind. Professional Conduct Rule 1.11. However, when the agency is the office of an elected prosecutor, who speaks and acts through his deputies, the integrity of the process of criminal justice compels that an elected prosecutor's personal disqualification requires the recusal of the prosecutor's deputies. *Goldsmith*, 270 Ind. at 491, 386 N.E.2d at 945.

ated a civil suit against the county and "stood to profit from a conviction of Johnson." Brief of Appellant at 22.

■ The Indiana Rules of Professional Conduct prohibit a lawyer from revealing "information relating to the representation of a client unless the client consents after consultation," Ind. Professional Conduct Rule 1.6, and, with respect to a lawyer's former representation, prohibit the later representation of another person in a substantially related matter if the subsequent client's interest are materially adverse to those of the former client, absent the former client's consent, Prof.Cond.R. 1.9. A government employee generally may not "participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment." Prof.Cond.R. 1.11(c)(1). In criminal cases, however, while acknowledging the importance of the "precepts of professional ethics," *Williams v. State*, 631 N.E.2d 485, 487 (Ind. 1994); *State ex rel. Meyers*, 432 N.E.2d 1377, 1378 (Ind.1982), this Court applies an analysis distinct from that used in attorney disqualification questions in civil cases:

> [A] lawyer must be disqualified if it is shown that the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client. The test must be applied to the facts of each case to determine whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith.

*Williams*, 631 N.E.2d at 487. *See also Daugherty v. State*, 466 N.E.2d 46, 50 (Ind. Ct.App.1984) (emphasizing the "distinction between due process considerations in relation to defendants and ethical considerations pertaining to lawyers"). This issue is not determined by considerations such as whether the prior client's interests are materially adverse to the subsequent client, or whether there is a substantial relation between prior and subsequent representations so as to impose an irrebuttable presumption that confidentiality has been breached. In the criminal context, however, courts are properly concerned with "whether the prosecuting attorney gained any confidential information

through their prior association." *Id.* To determine whether a prosecutor's subsequent use of confidential information denies the defendant a fair trial, the appropriate focus is whether the "information has provided assistance to the prosecution." *Williams*, 631 N.E.2d at 487; *see also Daugherty*, 466 N.E.2d at 50. We have disapproved of lawyers prosecuting a criminal case if, by reason of prior representation, the lawyer may have "acquired a knowledge of facts *upon which the prosecution is predicated or which are closely interwoven therewith.*" *State ex rel. Meyers*, 432 N.E.2d at 1378 (emphasis added). We conclude that the key inquiries are whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith, whether the prosecutor has received confidential information in the prior representation, and, more importantly, whether the information may have subsequently assisted the prosecution.

■ There exists a relationship between Reed's prior representation of Hiatt and the present criminal proceeding, since both involve the criminal charge of murder of Harry Dean Baker. However, the issues are not sufficiently interwoven to require reversal for failure to disqualify in the absence of any objection by Hiatt. The defendant does not show that Hiatt possessed any information about the defendant's participation in the crime. Hiatt and Reed contended from the outset that Hiatt had *no* knowledge of the crime because Hiatt was out of the state at the time Harry Baker was killed. Hiatt testified that he did not know the defendant very well, that he was just an acquaintance. He also testified that the only conversation he and the defendant had regarding Baker was shortly after Baker's disappearance when Hiatt drove to the defendant's house looking for Baker and the defendant said "he had no idea [where Baker was], he hadn't seen him and he really didn't have any place to direct [Hiatt] to go look." Record at 329. The defendant has not shown that Reed received confidential information from Hiatt and later used it without Hiatt's consent. It was Hiatt's testimony that placed the information in evidence. Furthermore, the infor-

mation did not assist the prosecution to the defendant's detriment.

These facts are distinguished from those in *Banton v. State,* 475 N.E.2d 1160 (Ind.Ct. App.1985), where the defendant objected to his prosecution for burglary by the Tippecanoe County Prosecutor's Office because the County Prosecutor had previously represented Banton's codefendant in the same matter. The codefendant testified that he had discussed with his attorney Banton's participation in the crime and that he provided information about Banton that he would not have revealed to a prosecutor. *Id.* at 1164. The *Banton* court held, "[t]he prejudicial effect on Banton's case is readily apparent. The prosecution, via a previous relationship with the same case, knew the details of Banton's case because [his codefendant's] case was, in effect, Banton's case." *Id.* In the present case, Hiatt was not charged as an accomplice of the defendant. Reed's representation of Hiatt did not provide him with the details of the prosecutor's case against the defendant.

We find that Richard Reed's prior representation of Hiatt did not require disqualification in this case.

■ Next, the defendant argues that Reed had a vendetta against the defendant and offers as support the fact that Reed waited until eighty-six days were left on the defendant's sentence for another crime before causing the grand jury to meet. In *Garren v. State,* 470 N.E.2d 719 (Ind.1984), the defendant, attempting to support his claim of conflict of interest, argued that the prosecutor "was hostile and antagonistic toward him and had used 'unnecessary rigor' in his prosecution of [the defendant]." *Id.* at 723. Focusing on the fact that "the defendant has failed to show that the Prosecutor obtained information from him in confidence" we held that the prosecutor's conduct and attitude were "irrelevant." *Id.* We likewise find the defendant's argument of a "vendetta" both unsupported and irrelevant.

■ To further urge that Reed had a conflict of interest, the defendant argues that the evidence linking the defendant to the murder was circumstantial and that this evidence also implicated Hiatt. Therefore, the defendant concludes, an independent prosecutor would have chosen to not pursue the defendant, just as the prosecutor chose not to pursue Hiatt. This Court cannot address the propriety of whether or not the prosecutor should or should not prosecute a suspect or suspects. The determination as to who shall be prosecuted lies within the sole discretion of the prosecuting attorney. *Lamotte v. State,* 495 N.E.2d 729, 733 (Ind.1986). "If he fails to exercise his discretion honestly and impartially, the remedy is impeachment. This Court may not substitute its discretion for that of the prosecuting attorney." *Id.* at 734 (included citations omitted).

The defendant also claims misconduct based upon the fact that Hiatt had initiated a civil suit against the county as a result of his arrest. However, the only support for this claim is his unsupported allegation that Reed had a conflict of interest because "Hiatt stood to profit." The defendant makes no showing that Reed stood to benefit and has not otherwise demonstrated a conflict of interest. We therefore find this claim to be without merit.

The defendant has failed to establish that the Delaware County Prosecutor should have recused himself due to conflict of interest.

■ The defendant makes several further claims of prosecutorial misconduct, but failed to take any appropriate steps to register any objections to the conduct at trial. We thus will address only the two claims identified by the defendant as constituting fundamental error. *Beasley v. State,* 643 N.E.2d 346, 348 (Ind.1994).

■ The first step in the appellate review of claims of prosecutorial misconduct is the determination of whether the prosecutor in fact engaged in misconduct. *Maldonado v. State,* 265 Ind. 492, 498, 355 N.E.2d 843, 848 (1976). The defendant claims misconduct occurred in the prosecutor's closing argument:

I've been working on this case for a couple of years now. And one of the hardest parts that I find in dealing with juries and doing jury trials, and I have a lot of sympathy for people who sit on juries, is I take

[a] case that I have lived with for a long period of time, and had, literally every day to look at it. I don't look at it everyday but quite a few days I actually do. To look at the evidence, to analyze it, to look at video tapes and to look at them again, and to look at photographs and have them enlarged sometimes and look at them again. And so, you know, I have a lot of opportunity to analyze, and that we come in here and we give you this same information in the course of a three (3) day trial, three (3) days or two and a half (2½) days, and expect you to have that same in depth analysis as we do. And I apologize to you. I wish that there was another way to do it, but we can't really take nor can you take weeks out of your lives to sit there and look at evidence and re-look at it and look at it again to see what you think it means. So, in some ways, you really have to depend upon our observations to an extent. However, we are not evidence. [The defense attorney] and myself, you've never seen us take an oath to tell the truth, although I like to think that none of us intentionally lie. We may be mistaken sometimes but I've never really seen an attorney intentionally lie in a criminal case. So take what we have to say from the point of view that we are advocates. Make no mistake about it. I want to win this case. So does [the defense attorney]. Hopefully the truth comes out somewhere in the middle of that. With that in mind if I state the evidence in some way that you think is inaccurate, go by your own memory of the evidence, not mine.

Record at 1261–63.

The defendant argues that it is improper for a prosecutor to imply that he has knowledge the jury may not have and to express an opinion concerning the truthfulness of the evidence based on such information. The defendant's argument is unfounded, as the prosecutor's comments show, on their face, that he did not make such an implication. We find that the prosecutor's comments were not improper and, therefore, no misconduct

occurred and we need not proceed to the second inquiry under *Maldonado*.

■ The defendant next contends the prosecution erred when it recalled two witnesses who had previously testified. While conceding that this, "standing alone, would not constitute fundamental error," *id.* at 32, he argues that the prosecutor was able to improperly influence the evidence because it is "obvious that the prosecutor and the 'star witnesses' discussed the testimony after the witness had testified and had been cross-examined." *Id.* at 33. Indiana Appellate Rule 8.3(7) provides:

> The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review.

App.R. 8.3(7). As in *Hebel v. Conrail, Inc.*, 475 N.E.2d 652 (Ind.1985), the defendant's brief in this case "does not present us with a sufficient statement of the evidence and supporting citations to the record to enable us, with reasonable effort and diligence upon our part, to comprehend" his allegations. *Id.* at 659. We decline to find prosecutorial misconduct in the recall of these witnesses.

We reject the defendant's contention of error arising from his various claims of prosecutorial misconduct.

### 2. Ineffective Assistance of Counsel

■ The defendant contends his trial counsel was ineffective. The resolution of the defendant's claim of ineffective assistance of counsel is guided by the Sixth Amendment to the United States Constitution and the United States Supreme Court's decisions interpreting that provision, specifically *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny.[3] As explained in *Spranger v. State*, 650 N.E.2d 1117 (Ind.1995):

---

**3.** The defendant argues the standard of review to be utilized is the *per se* presumption of ineffective assistance prong discussed in *Strickland*, applying to instances where there is an "actual con-

flict of interest." *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). The defendant suggests

*Strickland* embodies the following principles. Reversal for ineffective assistance of counsel may be appropriate in cases where a defendant shows both (a) that counsel's performance failed to meet an objective standard of reasonableness as measured by predominate professional norms, and (b) that such deficient performance so prejudiced the defendant as to deprive him of a fair trial. It shall be strongly presumed that counsel assisted the defendant adequately and exercised reasonable professional judgment in making all significant decisions. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Inexperience or isolated instances of poor tactics or strategy do not necessarily amount to ineffectiveness of counsel. To prove resulting prejudice amounting to the deprivation of a fair trial, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result would have been different.

*Id.* at 1121 (citations omitted).

█ When evaluating ineffectiveness claims, courts must be cognizant of the fact that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. Accordingly, when appellate courts are considering the claim of actual ineffectiveness of counsel, they "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. As such, we find it significant that, when the trial court overruled and denied the defendant's Motion to Correct Error on ineffective assistance of counsel grounds, Judge Robert Barnett gave the following reasons for his ruling:

[O]n the issue of ineffective assistance of counsel, the Court's aware of Bryan's past

experience as a Defense Counsel for many years, and has tried many homicide cases. I thought at the time, when I tried this case, a very difficult case, actually both to prosecute and defend, based on the time involved, it was a very difficult case, and I thought all through the trial that both sides did an excellent job, frankly. I thought it was a very well tried case. I am not going to second guess Defense Counsel on their trial strategy as to why or why not they did not call certain witnesses. I'm not going to do it. That's not my position, that's not my authority at this point. I have seen, from what I've heard, I have seen no evidence that Counsel was ineffective. In fact, as I indicated, I thought Counsel for the Defense did an excellent job.

Record at 1516–17.

█ The defendant's trial counsel was not deficient in failing to seek the disqualification of the prosecutor or the appointment of a special prosecutor due to conflict of interest. As we discussed above, the defendant has failed to establish that there was any conflict of interest. We also find no merit in the defendant's claim of trial counsel ineffectiveness for lack of preparation. The defendant cites as support the fact that counsel sought two continuances after the defendant had requested a speedy trial. The first continuance was requested because counsel was representing a different defendant in another murder trial. The defendant has offered no evidence demonstrating a reasonable probability that, but for counsel seeking this continuance, the result would have been different, as is required by *Spranger,* and, therefore, we find no error. As for the second continuance, defense counsel sought a continuance and told the trial court he was attempting to locate several witnesses, two of which were Terry Beal and Jeanne Ogle. Counsel told the trial court:

We believe that [Terry and Jeanne] live in the Albany area but they're not coming

that, because Reed had an actual conflict of interest, under *Strickland,* the burden shifts to the State to show a lack of conflict. Notwithstanding the fact that we have found *no* conflict of interest, the defendant is mistaken in his appli-

cation of *Strickland*'s actual conflict of interest prong: *Strickland* and *Cuyler* apply when the *defense counsel* has an actual conflict of interest, not when the prosecution has a conflict. *Id.*

forward. We've made phone calls, we've tried to find them, we believe they can be located through relatives, but they're just not ... I personally think that they know we're trying to find them but they don't want to get involved. So we think we can produce them in a short period of time. Record at 550. The defendant claims that both witnesses were available, first stating, "Terry Beal admitted he was a client of [defense counsel] near or during the time his testimony was needed." Brief of Appellant at 37. Beal's testimony in the record does not support this assertion[4] and the defendant offers no additional proof as to this claim. Without any support for this assertion, we find it without merit.

As further support for his claim of lack of preparation, the defendant also claims that Jeanne Ogle was, in fact, present pursuant to subpoena, but was excused by defense counsel. This argument is also without merit. The record is devoid of any indication that Ogle was subpoenaed and appeared *prior* to the motion for a continuance. The record actually lends support to the opposite conclusion—that she was subpoenaed after the continuance—thus validating the defense counsel's request for a continuance in order to locate the witness. Record at 1452 (Ogle testified that she was subpoenaed for the defendants *trial*). We find that the defendant has not shown that defense counsel's requests for continuances were the result of lack of preparation[5] and he has therefore failed to meet his burden in proving the requests constituted ineffective assistance of counsel.[6]

The defendant also claims ineffective assistance because "the record is devoid of requests for deposition funds, notice of depositions or any evidence that state's witnesses were interviewed, even though a co-counsel/

investigator was appointed and paid." Brief of Appellant at 37. At best we find this claim to be similar to the claim in *Tidmore v. State*, 637 N.E.2d 1290 (Ind.1994) that the defendant's "trial counsel failed to depose any of the State's witnesses and failed to interview the State's key witness ... prior to trial." *Id.* at 1292. We held in *Tidmore*,

The mere fact that trial counsel did not depose witnesses or interview [witnesses] prior to trial does not in and of itself demonstrate ineffective counsel. Appellant has made no showing that any of the witnesses made prior statements which were inconsistent to their trial testimony. There is no showing whatever that had counsel taken depositions or interviewed [witnesses] the outcome of the trial would have been any different.

*Id.* The defendant in the present case similarly fails to make such a showing and thus fails to support his claim.

The defendant's final claim of ineffective assistance involves counsel's alleged failure to impeach Homer Meyers. The defendant argues that, on cross-examination, counsel failed to elicit any information regarding a burglary about which Meyers was being questioned, but for which charges were never brought. To prove this was ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that, but for counsel's deficient cross-examination of Meyers on this issue, the defendant would have been found not guilty of the murder. *Spranger*, 650 N.E.2d at 1121. We note that counsel's cross and re-cross examinations of Meyers were twice as long as the State's direct and re-direct examinations. During the State's direct examination, Meyers testified that he was presently incarcerated in Ohio serving his sentence for a 1988 conviction of armed robbery. He also informed the jury that he had four other felo-

4. The only testimony from Beal in the record is during the hearing on the defendant's Belated Motion to Correct Errors and at no time during that testimony did Beal mention having been a client of the defense counsel.

5. We note that the defendant offers additional evidence as to what the witnesses would have said had they been called at trial. This information is not relevant to the defendant's claim of

lack of preparation, specifically the claim that the continuances sought by trial counsel were not warranted.

6. The defendant also claims that counsel failed to call witnesses who could substantiate the decedent's "involvement with persons in the drug world." Brief of Appellant at 38. We find no support for this contention.

ny convictions in two different states for possession of a controlled substance, possession of marijuana (over thirty-five grams), second degree robbery, and first degree assault. Meyers testified that he disliked the defendant because the defendant had "turned State's on me for a crime that I'm doing in Ohio right now." Record at 1009. Defense counsel then cross-examined the witness and obtained several admissions from Meyers which directly impeached his credibility: (1) that, in his own words, Meyers "had a revenge motive for [the defendant]" *Id.* at 1101; (2) that he initially didn't believe the defendant's confession to the murder because the defendant was often "blowing smoke" *Id.* at 1109; (3) that he waited years before turning the defendant in for the murder, despite several opportunities to do so; (4) during cross-examination, Meyers denied ever referencing the defendant's use of a hatchet to commit the murders, only to be confronted by counsel with his grand jury testimony directly contradicting his trial testimony; and (5) during cross-examination, he denied ever stating that someone else had also been involved in the murder, only to be confronted by counsel with a letter he wrote to Sheriff Elliott directly contradicting this trial testimony. In light of the considerable impeaching evidence against Meyers, we are unpersuaded that, but for the failure of trial counsel to mention a burglary for which Meyers had never been charged, there is a reasonable probability that the result would have been different. We reject the defendant's claims of ineffective assistance of counsel.

The judgment is affirmed.

SELBY and BOEHM, JJ., concur.

SULLIVAN, J., concurs in result with separate opinion in which SHEPARD, C.J., concurs.

SULLIVAN, Justice, concurring in result.

I would not reach the issue of whether Richard Reed's prior representation of Hiatt required disqualification in this case. Defendant did not invoke the special prosecutor statute, Ind.Code § 33–14–1–6, or otherwise seek the disqualification of the prosecutor.

As such, the issue is waived on appeal, *Hubbard v. State,* 518 N.E.2d 782, 784 (Ind.1988), unless a claim of fundamental error or ineffective assistance of counsel can be established. I find no basis for an ineffective assistance claim in that sound strategic considerations can easily be envisioned to support defense counsel's decision not to seek Reed's disqualification. *Id.*

As to fundamental error inquiry, I would find it sufficient to say that defendant did not avail himself of the special prosecutor statute to challenge the prosecutor, presumably for sound strategic reasons. Having raised no objection to Reed's prosecution of the case at any point from investigation through indictment, trial and sentencing, defendant cannot now be heard to claim that Reed's presence amounted to a "substantial blatant violation of basic principles [which] render[ed] the trial unfair." *Hart v. State,* 578 N.E.2d 336, 337 (Ind.1991).

In all other respects, I concur with the majority opinion.

SHEPARD, C.J., concurs.