**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 13 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**PARRIN J. GARNER**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PARRIN J. GARNER, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )   No. 20A03-1110-CR-473 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1103-FB-11

**September 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Parrin J. Garner, *pro se*, appeals his conviction and sentence for robbery as a class B felony.[1]  Garner raises three issues which we revise and restate as:

I. Whether Garner was denied the effective assistance of trial counsel;

II. Whether the evidence is sufficient to support his conviction; and

III. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.[2]

The relevant facts follow.  On the morning of December 28, 2010, Tamara Bland, an assistant manager at the Family Dollar store in Elkhart, counted money in the registers which included ten-dollar bills, five-dollar bills, and one-dollar bills.  That morning, an elderly couple came into the store and paid with a twenty-dollar bill.  Two men subsequently entered the store, and the shorter of the men, who had a light skin tone and was wearing a mask and a distinctive coat with "writing and different kind of patterns and stuff," asked Bland to open her register.  Transcript at 173.  The shorter man's mask was loose and Bland could see some facial hair around his mouth.  Bland initially thought it was a joke but realized it was "for real" when she saw a gun.  Id. at 170.  The taller man was wearing all black, a mask, and gloves, and said that Bland needed to open the register and told Bland: "b----, we robbing you."  Id.  Bland said, "In order for me to open

---

[1] Ind. Code § 35-42-5-1 (2004); 35-41-2-4 (2004).

[2] A copy of Garner's presentence investigation report on white paper instead of green paper is located in the appellant's appendix.  We remind Garner that Ind. Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Administrative Rule 9(G) shall be filed in accordance with Trial Rule 5(G) and Administrative Rule 9(G)."  Ind. Administrative Rule 9(G)(l)(b)(viii) states that "[a]ll pre-sentence reports as declared confidential by Ind. Code § 35-38-1-13" are "excluded from public access" and "confidential."  The inclusion of the presentence investigation report printed on white paper in the appellant's appendix is inconsistent with Ind. Trial Rule 5(G).

my register, you have to buy something." Id. The taller man took a toy doll and threw it on the register and said, "ring it up." Id. at 171. When the register opened, the taller man took all the money including quarters, nickels, and dimes, but did not take any pennies. The taller man then asked Bland to open up the second register, and Bland told him that there "was nothing in that register so it would be pointless for [her] to open it." Id. at 181. At some point, Michael Hyman, an employee of the store, entered the store, and the shorter man told Hyman "You're cool, you're good, man." Id. at 228. Based upon the shorter man's facial hair, body size, and skin tone, Hyman recognized him as a person from his neighborhood. The two men then left the store, Bland called the police immediately, and the police were dispatched at approximately 10:00 a.m.

Elkhart City Police Sergeant Carl Buchmann viewed the surveillance video and then went in search of the suspects. Sergeant Buchmann observed Garner and Mark Eason walking away from him on Marion Street around 11:41 a.m. about two and one-half miles away from the scene of the robbery and noticed "the jackets they were wearing, their body size, and their body size in relation to one another" and thought that they looked like the suspects that he had just observed on the surveillance tape. Id. at 236. Garner also had a "highlighter or chartreuse yellow rubber band around the bottom of the cuff of his jeans," which Sergeant Buchmann had observed in the surveillance video. Id. at 250. Sergeant Buchmann approached Garner and Eason, introduced himself, and said that he was "doing an investigation right now looking for a couple of guys that just robbed a place believe it or not." Id. at 240. Garner asked Sergeant Buchmann if he stopped all the black males that he saw on the street right after a robbery,

3

and Sergeant Buchmann said that he did not do that but stops persons that match the description of the suspects. Eason was "[d]efiant." Id. at 262. During the following conversation, Garner kept "looking back and forth to his left and his right," and Sergeant Buchmann thought that Garner might be looking for an escape route and placed Garner in handcuffs. Id. at 241. Sergeant Buchmann found money in Garner's pocket which included a twenty-dollar bill, a ten-dollar bill, five five-dollar bills, and four one-dollar bills. Sergeant Buchmann also found a pair of gloves in Garner's pocket. The police photographed Garner while he was not handcuffed and also photographed Eason.

On March 16, 2011, the State charged Garner with robbery while armed with a deadly weapon as a class B felony. At trial, Bland testified that the clothing and shoes Garner was wearing in the photograph following his stop was consistent with the clothing worn by the taller suspect. Bland testified that she was very confident with respect to her identification of the shoes and that she was trained to observe and report as she had training in and had previously worked in security and that "[i]n doing my training and security, one of the main things that they taught us was to observe and report." Id. at 160. Bland also testified that the gloves in the picture taken following Garner's stop were consistent with the gloves worn by the taller person. Hyman testified that he recognized the photograph of Eason as the person that he knew from around the neighborhood and the person involved in the robbery. Hyman also testified that he recognized the coat that Garner was wearing in the photograph.

Sergeant Buchmann testified that he had noticed that Garner and Eason looked "a lot like" the suspects that he observed on the surveillance tape. Id. at 236. Elkhart City

4

Police Detective Tim Freel, the detective assigned to the case, described the similarities in the clothing worn by the taller suspect and Garner when he was stopped by the police including the yellow band around the leg. When asked whether he had an opinion whether the coat, pants, and yellow band seen on the surveillance video were the same as those found on Garner, Detective Freel stated: "Oh, I absolutely did. It's, in my opinion, was absolutely a match." Id. at 297. The witnesses provided varying measurements given for Garner's height,[3] the surveillance video was played for the jury, and at one point Garner stood up during the trial.

After the two-day trial, the jury found Garner guilty as charged. The court sentenced Garner to nineteen years and ordered that the sentence be served consecutive to his sentences imposed under Cause Numbers 20C01-0710-FC-22 and 20C01-0801-FD-1.

We note that although Garner is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied.

I.

The first issue is whether Garner was denied the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984),

___

[3] Sergeant Buchmann testified that Bland informed him that the suspect was over six feet tall. Bland indicated that she was under the impression that the taller suspect was at least as tall as Hyman if not a little taller. Hyman testified that he was six feet four inches tall and that the taller suspect was about his height. Detective Freel testified that someone listed Garner's height as six foot three in their records.

reh'g denied), reh'g denied, cert. denied, 534 U.S. 830, 122 S. Ct. 73 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986).

Garner argues that his trial counsel was ineffective because he "failed to properly investigate the case to prepare an adequate defense." Appellant's Brief at 7. Without

6

citation to the record, Garner argues that his trial counsel failed to investigate the following claims: "the physical description as to height and build as reported by victim Bland did not match him," Garner "was forced to [have] photos taken by Sgt. Buchman, when he was not in custody," and "the physical evidence as to the specific money taken in the robbery did not comport to the description given by Bland at deposition and, again, did not comport to the description given by Bland in trial." Id. at 7-8. In the portion of his brief addressing the sufficiency of the evidence, Garner appears to argue that his trial counsel was ineffective by failing to object to the "identification" on the basis that the description of the suspect's height was taller than his height. Id. at 11. Without citation to the record, Garner also argues that his counsel was ineffective for failing to properly negotiate for a reasonable plea agreement, failing to object to jury instructions, and failing to object to the prosecutor's closing argument.

Given that Garner does not cite to the record or develop his arguments, we conclude that his arguments are waived. See Johnson v. State, 675 N.E.2d 678, 681 n.l (Ind. 1996) (observing that the defendant failed to cite to the record and "[o]n review, this Court will not search the record to find grounds for reversal"); Haddock v. State, 800 N.E.2d 242, 245 n.5 (Ind. Ct. App. 2003) (noting that "we will not, on review, sift through the record to find a basis for a party's argument"); see also Smith v. State, 822 N.E.2d 193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), trans. denied; Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented,

7

supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.").[4]

## II.

The next issue is whether the evidence presented was sufficient to support Garner's conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

Garner argues that the evidence is insufficient because the descriptions as to the height of the robbers do not match his height which he alleges, without citation to the record, is six feet and one inch; only clothing was identified and no physical features of the suspects were seen; and the physical evidence as to the specific money taken in the robbery did not comport to the description given by Bland.

Garner's request is essentially that we reweigh the evidence or judge the credibility of witnesses, which we cannot do. Jordan, 656 N.E.2d at 817. With respect to

---

[4] Garner also does not cite to the record in his statement of facts. See Ind. Appellate Rule 46(A)(6) (governing the statement of facts and providing that "[t]he facts shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C)").

Garner's argument regarding his height, while there were somewhat varying measurements given, we observe that Garner stood up during the trial and the surveillance video was played for the jury. Based upon the record, including the testimony that Garner's coat, gloves, shoes, and yellow band around his leg matched the items worn by the taller suspect seen in the surveillance video, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Garner was guilty of robbery as a class B felony.

III.

The next issue is whether Garner's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). Garner argues that he has "no extensive history of serious violent offenses" and that "the Affidavit for Probable Cause states only that only one of the suspects had a gun and that it was only shown to the victim Bland[,] [a]s such, there was no force used on Bland in actuality." Appellant's Brief at 15-16.

Our review of the nature of the offense reveals that Garner went into the Family Dollar store with Eason, and Eason, while armed with a gun, asked Bland to open her register. Garner said, "b----, we robbing you," and took money from the register. Transcript at 170.

9

Our review of the character of the offender reveals that Garner was alleged to be a delinquent for resisting law enforcement and disorderly conduct and was adjudicated delinquent in 2006. Garner was "dishonorably discharged from probation" in that case. Appellant's Appendix at 11. That same year, Garner was adjudicated delinquent for the following offenses if committed by an adult: battery resulting in bodily injury as a class A misdemeanor, battery as a class B misdemeanor, and robbery as a class C felony. As an adult, Garner was convicted of robbery as a class C felony and theft as a class D felony in 2008. He was on probation at the time of the current offense. At the sentencing hearing, the court stated: "Everything we have available in the county, in one way, shape, or form, has been tried, none of it worked . . . . Other sanctions just simply have not resulted in the rehabilitation of this Defendant." Id. at 374.

After due consideration of the trial court's decision, we cannot say that the sentence of nineteen years is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Garner's conviction and sentence for robbery as a class B felony.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.