*T. Gazlay*, for the appellant.

---

WILSON *v.* THE STATE.

Indictment for rape. The defendant applied for a continuance of the cause, on account of the absence of a witness, by whom he expected to prove that the prosecutrix was the keeper of a house in which another female

was kept, who had, for money, had illicit intercourse with the proposed witness, and that the prosecutrix had received a part of said money, with full knowledge, &c.

*Held*, that evidence of a particular act of immorality is not admissible to impeach a witness, or affect his general character.

*Held*, also, that as the evidence given on the trial is not in the record, this Court can not say that the Court below erred in refusing the continuance.

On the calling of the cause for trial, the defendant presented an affidavit showing that one *F.*, who was preparing to assist in the prosecution, had been employed by him to make his defense, and that he had disclosed to said attorney the facts in the case, and the evidence for his defense, and moved the Court to refuse the said *F.* leave to assist in the prosecution.

*Held*, that the attorney should not have been permitted to take part in the prosecution; that to sanction such a course would be to defeat the very purpose for which Courts were organized, viz., the administration of *justice*.

May Term,
1861.

WILSON
.v.
THE STATE.

Wednesday,
June 12.

APPEAL from the *Lagrange* Circuit Court.

HANNA, J.—Indictment for rape. Trial, and conviction. It is averred that errors intervened: 1. In refusing a continuance. 2. In permitting *James M. Flagg*, an attorney, to assist at the trial, in the prosecution.

The affidavit of the defendant stated that he was informed, and believed the fact to be true, that the prosecutrix was one of the keepers of a house of prostitution, in which another female was kept, who, for money, had illicit intercourse with one, *Reed;* that a part of said money was received by said prosecutrix, with full knowledge, &c.; that *Reed* was in *Kansas;* that he could prove said facts by him, but that he knew of no other person by whom he could prove them. Was the affidavit sufficient?

It will be observed, that it is not directly charged that the prosecutrix was of ill fame; but it was proposed to continue to obtain evidence of specific facts, from the proof of which it might be inferred that she was such; that is, that she had received the price of illicit commerce, thereby overlooking the injunction, that the "price of a dog, and the hire of a whore, are an abomination in the sight of the Lord." Deut. 23: 18.

The evidence of a particular act of immorality is not admissible to impeach a witness, or affect his general character. *Long* v. *Morrison*, 14 Ind. 598; *Shattuck* v. *Myers*, 13 Ind. 51. The evidence here desired, could only be offered to show that there was not the utmost reluctance and resistance upon

May Term, 1861.

WILSON
v.
THE STATE.

the part of the prosecutrix. The evidence is not in the record; and we can not, therefore, say that the Court erred. It is true, the evidence was not before the Court upon the ruling, in the first instance, but in a doubtful case we must presume that the Court had in view the evidence produced, and that proposed, in considering the previous rulings on an application for a new trial.

As to the second point: the defendant objected to *Flagg's* assisting in the prosecution, and filed his affidavit, stating, in substance, that he " had employed *Flagg* to defend him against said charge, executed to him his notes for $250, and disclosed. to him the facts in the case, and the evidence for his defense;" that after the return of the indictment, *Flagg* had informed him that he would not act further as his attorney, and had delivered up his notes.

*Flagg* stated, by affidavit, that he had been desired by defendant to act as his counsel, who stated to affiant that the prosecuting witness and her husband did not desire his services, and on that ground he consented to act; but having subsequently learned that said persons had desired, and did then desire, his services, and had sent word to him to that effect, he declined to act for defendant, "and returned to him the notes he had received from him for services; that he has received no compensation from defendant, and has not, to his knowledge, learned any thing from defendant as to his grounds, or means, of defense."

The objection of defendant was overruled, and Mr. *Flagg* was permitted to assist in the prosecution; examining the witnesses, arguing to the jury, and acting as attorney from the commencement to the close of the trial.

Was this ruling of the Court proper? See the authorities referred to in 1 Monell's Practice, p. 182, upon the right of an attorney in a given case, when changed, to appear for the opposite party. Also, 1 Ferg. Pr. 37, 38; Graham's Pr. 49; 1 Chitty's Arch. 56, 7th Ed.

The Attorney General, in his brief, says: " Whether for this error the judgment should be reversed, or not, I will not inquire, but, in any event, I hope the Court will make this case the occasion of administering to Mr. *Flagg* a rebuke,

which will serve as a salutary lesson to him and others, including the judge who permitted him to engage in the prosecution, with a full knowledge of the facts."

It is not our province, in our opinions, required by the Constitution, to administer a rebuke to any one, intended as such. We are only called upon to pronounce the law, as we conceive it to be. In searching for the reason upon which a conclusion rests, we are often led to consider the results which might flow from the maintenance of an adverse conclusion. For instance, in the case at bar, if the ruling of the Court below, and the conduct of Mr. *Flagg* as an attorney and officer of that Court, should be sanctioned as legal, we are constrained to believe, that the positive tendency of such ruling would be to defeat the very purpose for which the Court was organized, namely, the administration of justice; and if indulged and continued in Courts, and the officers thereof, will necessarily result in sapping the foundations of the temple of justice. With what confidence could one, arraigned upon a charge of crime, confer with his attorney, or reveal to him his evidence, and thereby prepare for his defense, if that officer is permitted, after thus acquiring such knowledge, to change their relative positions, and instead of standing up as his defender, to stand forth as his accuser. Would he not consider it better to stand mute, dumb, as the sheep before the shearer, rather than disclose the evidence which might thus be turned against him? He might perhaps, truthfully, believe it more to his interest to return to the practice of a semi-barbarous age, when the prisoner was not heard in his defense by counsel, or witnesses in his behalf, than thus to have the weapons of his defense turned against him, by those in whom, by the acknowledged law and the statute, he had a right to confide.

It will be observed, that Mr. *Flagg* does not negative the defendant's statement that he had disclosed to him the "facts and evidence in his defense;" but states that he had not learned any thing from defendant, as to his "grounds or means of defense." We cannot see how he could know, in advance of the trial, that the facts and evidence in favor of the defense, if disclosed to him, could not be made avail-

able by him, in some one of the phases the defense might assume, either in shaping questions or producing witnesses. If the defendant had not disclosed the facts and evidence in the case, why did not Mr. *Flagg* so state? He was certainly attempting to place himself in a position that should have called forth the utmost precision, in showing that he had not acquired from the defendant any information which he might use to his detriment.

We have not thought it necessary, under the circumstances disclosed in this case, to say any thing on the question whether a defendant, by a contract of employment, acquires a right to the services of an attorney which the latter can not voluntarily refuse to perform, against the will of his employer.

*Per Curiam.*—The judgment is reversed; and the clerk is directed to issue an order to the keeper of the State Prison, to return the appellant to the custody of the sheriff of *Lagrange* county.

*A. Ellison*, for the appellant.

*James G. Jones*, Attorney General, for the State.