# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2013

Lyle W. Cayce
Clerk

No. 11-40331
c/w No. 11-40846

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RUDY GUTIERREZ, also known as Rudolpho Gutierrez,

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:10-CV-56
USDC No. 2:06-CR-380-4

Before BARKSDALE, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:*

The *pro se* petitioner in this habeas case, Rudolpho "Rudy" Gutierrez, was convicted by a jury of conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, and money laundering in violation of 18 U.S.C. § 1956(a)(1) and (h).  He

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40331 c/w 11-40846

was sentenced to concurrent 360- and 240-month terms of imprisonment, and two concurrent ten-year terms of supervised release.

This appeal concerns Gutierrez's argument that he received ineffective assistance of counsel due to his pre-trial counsel's conflict of interest.[1]  On December 11, 2006, Amador Garcia was appointed to represent Gutierrez during his arraignment.  On January 4, 2007, Gutierrez obtained new counsel and Garcia withdrew.  On May 18, 2007, Garcia was appointed to represent Carlos Martinez, a co-conspirator who had previously pleaded guilty and who testified at trial against Gutierrez in the hope of obtaining a shorter sentence.  A previous panel of this court affirmed Gutierrez's convictions on direct appeal, including holding that there was no plain error in the admission of Martinez's testimony because "other evidence established the same facts" as those testified to by Martinez, "and there is no reasonable  probability that the jury would not have found Gutierrez guilty without Martinez's testimony." *United States v. Gutierrez*, 292 F. App'x 412, 415-16 (5th Cir. 2008).  That panel, however, expressly reserved the issue of Gutierrez's ineffective assistance of counsel claims. *See id.* at 417.

Gutierrez subsequently filed a motion for habeas relief pursuant to 28 U.S.C. § 2255.  In his petition, Gutierrez argued, *inter alia*, that his trial counsel was ineffective for failing to object to Martinez's testimony on the ground that Martinez was represented by Garcia, a court-appointed attorney who had earlier represented Gutierrez during the same proceeding.  Before the government filed an answer, Gutierrez filed an addendum to his § 2255 motion, raising additional constitutional and sentencing issues.  *See* Fed. R. Civ. P. 15(a) (allowing amendment of a pleading once as a matter of course in such circumstances).  After the district court had granted the government's motion

---

[1] Gutierrez's motion for leave to file a supplemental reply brief is GRANTED.

No. 11-40331 c/w 11-40846

for an extension of time in which to file a response to the petition, Gutierrez filed an opposition to the motion. Attached to the opposition notice was a memorandum of law in support of his § 2255 motion in which Gutierrez argued for the first time that he was denied effective assistance of counsel by Garcia due to Garcia's subsequent representation of Martinez. The district court ultimately rejected all of Gutierrez's claims and dismissed his § 2255 motion with prejudice. With regard to the issue of the ineffectiveness of Garcia's representation, the district court stated only that:

> In the Court's order to the government to respond to Movant's § 2255 petition, the Court noted that " . . . the United States should also provide an affidavit from Amador Garcia addressing the claim that Garcia's successive representation of Gutierrez and then a government witness at trial, Carlos Martinez, violated [Gutierrez's] Sixth Amendment rights." The government acknowledges that it mistakenly overlooked this instruction, but respectfully argues that the Court need not hear from Mr. Garcia because Movant cannot establish prejudice. In his reply to the government's response, Movant does not argue that an affidavit would assist him in establishing prejudice nor request that the affidavit be ordered. The Court finds that, because Movant cannot establish prejudice, an affidavit is not necessary on this issue.

Gutierrez appealed. This court granted Gutierrez a certificate of appealability (COA) with respect to:

> (1) whether this court should take cognizance of the unraised issue of whether the district court abused its discretion by implicitly denying leave to amend the § 2255 motion to add a claim contained in Gutierrez's "Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence," which was dated April 7, 2010, and file stamped April 13, 2010, that his court-appointed attorney's subsequent representation of a government witness constituted a violation of his right to effective assistance of counsel and (2) if this court takes cognizance of the unraised issue, whether it has merit. *See* § 2253(c).

We review the district court's implicit denial of leave to amend the § 2255 motion to add the claim that Garcia provided ineffective assistance of counsel

No. 11-40331 c/w 11-40846

for an abuse of discretion. *See United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996). Gutierrez's amended claim was timely filed under § 2255(f) as it "relates back" to Gutierrez's claim that his trial counsel was ineffective for failing to object to Garcia's subsequent representation of the witness, because both claims arise from the same "common core of operative facts." *See Mayle v. Felix*, 545 U.S. 644, 664 & n.7 (2005); Fed. R. Civ. P. 15(c)(1)(B). Nothing in the record indicates that Gutierrez acted in bad faith or that the government would be prejudiced by the amendment. *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005). Nor was it readily apparent that Gutierrez's amended claim would have been futile on its merits. *See id*. Accordingly, the district court abused its discretion by implicitly denying Gutierrez leave to amend his § 2255 motion. *See Riascos*, 76 F.3d at 94.

However, on the facts before us, we conclude that Gutierrez's ineffective assistance of counsel claim fails on the merits. On appeal, as in the district court, Gutierrez argues that he received ineffective assistance of counsel because Garcia worked under a conflict of interest, and that the prejudice resulting from the conflicted representation should be presumed. *See, e.g., Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). We have held that "even in the absence of a showing of prejudice," a defendant is deprived of the constitutional right to effective assistance of counsel "when his attorney operates under an actual conflict of interest." *United States v. Alvarez*, 580 F.2d 1251, 1260 (5th Cir. 1978). "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2003)). "An adverse effect on counsel's performance may be shown with evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients." *Perillo v. Johnson*, 205 F.3d 775, 807 (5th Cir. 2000) (internal quotation marks omitted); *see also*

4

*Infante*, 404 F.3d at 392-93 (citing cases finding a conflict where attorney was required to cross-examine his own current or former client).  Gutierrez does not explain how Garcia's subsequent representation of Martinez adversely affected the manner in which Garcia represented Gutierrez, given that Garcia's representation of Gutierrez had unquestionably terminated by the time Garcia represented Martinez.  Though he summarily states that he "held nothing back" from Garcia, Gutierrez does not describe the scope of Garcia's representation of him, the amount he discussed his case with Garcia, the extent of the confidential information he disclosed to Garcia, or any actions that Garcia took on his behalf during the representation.  Nor does Gutierrez explain how any of the information he gave Garcia could have bolstered Martinez's plea bargaining position.  Moreover, though he speculatively states that trial counsel was hindered in engaging in possible plea negotiations and developing possible defense and trial strategies due to Garcia's conflict, Gutierrez does not show that Garcia's alleged conflict of interest actually adversely affected trial counsel's representation of him.  Accordingly, on these facts, Gutierrez has not shown a violation of his Sixth Amendment right to the effective assistance of counsel.[2]

The judgment of the district court is AFFIRMED.

---

[2] By so holding, we do not approve the actions of attorney Garcia, who represented different co-conspirators at different points in the same proceeding, or the actions of the district court, who appointed Garcia to represent different co-conspirators in that proceeding.

No. 11-40331 c/w 11-40846

JAMES L. DENNIS, Circuit Judge, dissenting:

I respectfully dissent.  The issue presented by this petition for habeas relief is whether the district court's successive appointments of the same attorney in the same criminal case, first, to represent the defendant as defense counsel prior to trial, and, second, to represent a prosecution witness against the defendant during his trial, violated the defendant's rights to a fair trial, to make a defense, and to effective assistance of counsel.  The *pro se* petitioner in this case, Rudolpho "Rudy" Gutierrez, was convicted by  jury of conspiracy to commit drug-trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846 and money-laundering in violation of 18 U.S.C. § 1956(a)(1) and (h), and was sentenced to concurrent 360- and 240-month terms of imprisonment, to be followed by two concurrent ten-year terms of supervised release.  He was provided a court-appointed defense attorney, Amador C. Garcia, who represented him at arraignment and for nearly a month following his indictment.  Gutierrez then hired new defense counsel and Garcia was relieved of his appointment as Gutierrez's defense counsel.  Later, in the same case, the court appointed Garcia, Gutierrez's former defense attorney,  to represent Carlos Domingo Martinez, a cooperating prosecution witness in the same case, who testified against Gutierrez at trial.  No one questioned or objected to the court's appointment of Garcia to represent Martinez.  Martinez testified at Gutierrez's trial that he had been a co-conspirator with Gutierrez in the charged crimes but that he had pleaded guilty and was testifying against Gutierrez in the hope of obtaining a lighter sentence for himself.

I agree with the majority that the district court at least abused its discretion to the extent that it implicitly denied Gutierrez leave to amend his § 2255 petition to add this claim.  In fact, in my view, the record shows that

the district court also ruled against Gutierrez on the merits by holding that he could not show that he had been prejudiced by Garcia's successive appointments and representation of Martinez after having represented Gutierrez in the same case. Furthermore, because the majority errs in concluding that Gutierrez must show that he was prejudiced by the district court's appointment of Garcia, his former defense attorney, to represent Gutierrez as a prosecution witness against him in the same case, I respectfully dissent.

I would hold that Gutierrez is entitled to collateral relief pursuant to 28 U.S.C. § 2255, including a reversal of his convictions.  The district court's appointment of Garcia, Gutierrez's former defense counsel, as counsel for a significant prosecution witness at Gutierrez's trial, making Garcia part of the prosecution team against his former client, constituted government interference with Gutierrez's rights to assistance of counsel and to a fair trial. "Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (citing *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984)). "Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." *Id.*  That is doubly true when, as in the present case, the government and the trial court together cause a lawyer to violate the long well-established common law rule prohibiting an attorney from switching sides in the same case.

Historically, from the beginning of our state and federal judicial systems, courts have categorically prohibited attorneys from switching sides in the same case because it would "'defeat the very purpose for which . . . [c]ourt[s] [are]

7

organized, namely, the administration of [an adversarial system of] justice.'"[1]
When a client's opponent "'prevail[s] against him with the aid of an attorney
who formerly represented the client[ ] in the same matter . . . [it] undermine[s]
public confidence in the legal system as a means for adjudicating disputes.'"[2]
For the reasons that follow, I would hold that, in a criminal case, when the
court appoints a former defense counsel in the same case to change sides and
work against his former client, there is a violation of this cardinal rule that
also constitutes a violation of the Fifth and Sixth Amendments, which
guarantee the accused the right to assistance of counsel for his defense, the
right to present a defense, and the right to a fair trial. The court appointment
of a former defense counsel to work with the prosecution against his former
client in the same case so clearly threatens "the right of the accused to require
the prosecution's case to survive the crucible of meaningful adversarial
testing," and is "so likely to prejudice the accused, that the cost of litigating
their effect in a particular case is unjustified," that prejudice is legally
presumed. *Strickland*, 466 U.S. at 692 (citing *Cronic*, 466 U.S. at 659 & n.25).
Accordingly, I would reverse the district court's judgment and remand with
instructions to grant the petitioner's motion for habeas relief.

---

[1] *United States v. Bryant*, 16 C.M.R. 747, 752 (A.B.R. 1954) (quoting *Wilson v. State*, 16 Ind. 392, 395 (1861)); *accord, e.g.*, EDWARD P. WEEKS, A TREATISE ON ATTORNEYS AND COUNSELLORS AT LAW § 120, at 254-55 (2d ed. 1892). *See generally* Kenneth L. Penegar, *The Loss of Innocence: A Brief History of Law Firm Disqualification in the Courts*, 8 GEO. J. LEGAL ETHICS 831, 838 (1995).

[2] *In re Am. Airlines, Inc.*, 972 F.2d 605, 618 (5th Cir. 1992) (quoting *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979)).

No. 11-40331 c/w 11-40846

## I.

In 2006, Gutierrez was indicted in federal court in the Southern District of Texas in connection with a drug-trafficking and money-laundering conspiracy. Along with five alleged co-conspirators, Gutierrez was indicted for his alleged role in a conspiracy to traffic marijuana and cocaine and to launder the proceeds using a family trucking business as a cover. Gutierrez was assigned a court-appointed attorney, Amador C. Garcia, pursuant to the Criminal Justice Act (CJA). *See* 18 U.S.C. § 3006A.

Garcia represented Gutierrez for several weeks, including during his arraignment, entry of a not-guilty plea, and trial preparation. During this time, Gutierrez avers that he confided in and "held nothing back from Mr. Garcia." Later, however, Gutierrez employed new defense counsel and Garcia's appointment, but not his continuing duties of loyalty and confidentiality he owed his former client, was terminated. Only a few months after that, the district court appointed Garcia, under the CJA plan, to represent Carlos Domingo Martinez, a prosecution witness against Gutierrez in the same case. No one objected to the appointment.

The evidence at trial tended to show that Gutierrez's brother and other family members ran a drug-trafficking business dealing in cocaine and marijuana using a trucking business as a cover. At trial, Martinez, a truck driver, testified that he had conspired and worked with Gutierrez to transport loads of marijuana in his truck, that he was arrested while transporting one such shipment, that he had pleaded guilty, and that he was testifying against Gutierrez in the hope of obtaining a lighter sentence for his role in the conspiracy. In its closing argument, the government crucially relied on Martinez's description of a conversation that took place among Martinez,

Gutierrez, and Gutierrez's brother to show that Gutierrez was part of his brother's conspiracy to traffic marijuana. Gutierrez was convicted of both the marijuana-trafficking and money-laundering charges but acquitted of the cocaine-trafficking charge. Gutierrez appealed his conviction and challenged the sufficiency of the evidence and raised various evidentiary and constitutional errors arising from the court's appointment of Garcia to undertake adverse duties stemming from his representation of both Gutierrez and Martinez in the same case. We affirmed Gutierrez's conviction on direct appeal, but we declined to reach the ineffective assistance of counsel and other claims he asserted arising from Garcia's conflicting duties of representing, in succession, adverse clients on both sides of the same criminal case. *United States v. Gutierrez*, 292 F. App'x 412, 417 (5th Cir. 2008) (citing, *inter alia*, *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.")).

After his conviction, Gutierrez filed a motion for habeas relief pursuant to 28 U.S.C. § 2255. In his original § 2255 motion, and again in later filings, Gutierrez asserted that Garcia's appointment to represent the prosecution witness, Martinez, during Gutierrez's trial and after Garcia had represented Gutierrez as defense counsel prior to trial in the same case, violated Gutierrez's constitutional rights; and that he was deprived of his right to effective assistance of counsel when his trial defense counsel failed to object to Garcia's prosecution-related appointment and representation of Martinez as a prosecution witness.[3] The government t has never denied that Garcia was

---

[3] Gutierrez argued on direct appeal that his trial counsel was ineffective for failing to object to the court's appointment of Garcia to represent the prosecution witness Martinez.

No. 11-40331 c/w 11-40846

appointed to represent and actually represented Martinez after representing Gutierrez in the same case.  Instead, the government argued that Gutierrez was not prejudiced by the district court's appointment of Garcia to represent Martinez and by Garcia's successive representation of the two men.

The district court agreed and concluded that, because Gutierrez "cannot establish prejudice," he could not succeed on his claim that "Garcia's successive representation of Gutierrez and then a government witness at trial, Carlos Martinez, violated [Gutierrez's] Sixth Amendment rights."  Gutierrez timely appealed the district court's judgment denying him habeas relief under § 2255.

## II.

"'A fair trial in a fair tribunal is a basic requirement of due process'" guaranteed by the Fifth Amendment to the Constitution.  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).  Further, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  "This right has been accorded . . . 'because of the effect it has on the ability of the accused to receive a fair trial.'"  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *Cronic*, 466 U.S. at 658). "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing."  *Cronic*, 466 U.S. at 656.  A criminal defendant's right to counsel is grounded in both the Sixth Amendment and the

---

*See Gutierrez*, 292 F. App'x at 415-17.  Gutierrez, acting *pro se*, urged this point again before the district court in his § 2255 motion, but after that motion was denied, he did not seek a certificate of appealability on that issue.

Due Process Clause's guarantee of the right to a fair trial. *See, e.g.*, *id.*; *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) ("[T]he Sixth Amendment right to counsel [is] 'so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment.'" (quoting *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963))); *Powell v. Alabama*, 287 U.S. 45, 50-53 (1932) (holding, prior to the incorporation of the Counsel Clause, that the trial court's appointment of counsel in a manner that precluded counsel from providing "effective and substantial aid" violated the defendants' due process rights).

Sixth Amendment and related fair trial and due process violations fall into three categories distinguished by the severity of the deprivation and whether the defendant is entitled to a full presumption of prejudice or a limited presumption of prejudice, or whether prejudice must be shown by the defendant in order to succeed on his claim. *See Strickland*, 466 U.S. at 692, 693; *United States v. O'Neil*, 118 F.3d 65, 70 (2d Cir. 1997); BRIAN R. MEANS, POSTCONVICTION REMEDIES § 35.3, at 1403 (2013); WAYNE LAFAVE ET AL., CRIMINAL PROCEDURE §§ 11.7-11.9 (3d ed. 2007 & Supp. 2013).

In *Strickland*, the Court first described a "certain [category of] Sixth Amendment contexts . . . [in which] prejudice is presumed." 466 U.S. at 692. Falling into this category, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Id.* "So are various kinds of state interference with counsel's assistance." *Id.* at 692 (citing *Cronic*, 466 U.S. at 659 & n.25 (in turn citing *Geders v. United States*, 425 U.S. 80 (1976); *Herring v. New York*, 422 U.S. 853 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 612-13 (1972); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961); *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); *Ferguson v. Georgia*, 365 U.S.

570 (1961); *Williams v. Kaiser*, 323 U.S. 471, 475-76 (1945))).  "Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost."  *Id.* (citing *Cronic*, 466 U.S. at 658).  "Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent."  *Id.*  This category also includes instances in which the state in the person of the trial judge interferes with defense counsel's effective assistance. *See, e.g.*, *Walberg v. Israel*, 766 F.2d 1071, 1074 (7th Cir. 1985) (Posner, J.) (holding *per se* prejudice applied where trial court  appointed defense counsel to represent defendant, then, through his conduct at pretrial proceedings, implicitly indicated that counsel's future appointments would be jeopardized if he pressed too hard during trial).  "If the state is not a passive spectator of an inept defense, but a cause of the inept defense, the burden of showing prejudice is lifted.  It is not right that the state should be able to say, 'sure we impeded your defense—now prove it made a difference.'"  *Id.* at 1076.

A second type of ineffective-assistance-of-counsel claim warrants a "similar though limited presumption of prejudice." *Id.* at 692.  The *Strickland* Court explained:

> In *Cuyler v. Sullivan*, . . .  the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest.  In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties.  Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests.  Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, it is reasonable for the criminal justice system

to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

*Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), and citing FED. R. CRIM. P. 44(c)). "An actual conflict is shown, for example, where jointly represented codefendants are tried together and the factual circumstances require counsel to offer evidence which assists one codefendant but adversely affects others." LAFAVE, *supra*, § 11.9(d), at 922 (internal quotation marks omitted) (citing, *inter alia*, *Turnquest v. Wainwright*, 651 F.2d 331 (5th Cir. Unit B July 1981) (holding that retained counsel, who represented two co-defendants, was presented with an actual conflict of interest where counsel failed to call prospective witness who would have offered testimony implicating one co-defendant but favorable to the other co-defendant)).

Finally, *Strickland* described the third, most general category, involving no conflict of interest or presumption of prejudice, in which "claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." 466 U.S. at 693. The Court explained:

> The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be

prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

*Id.* Claims of this type of ineffective assistance are analyzed under the most familiar third category of *Strickland v. Washington*, which requires a defendant to show (1) that his attorney's performance fell below an "objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Applying the foregoing principles, I conclude that, collectively, the actions of the district court, the prosecution, and Garcia, amounted to violations of Gutierrez's Sixth Amendment and fair trial rights that are presumed to have been prejudicial under *Strickland*'s first category: *viz.*, (1) the district court's appointment of Garcia, Gutierrez's former defense counsel, to represent the prosecution witness, Martinez, in the same prosecution against Gutierrez; (2) the government's failure to object to the appointment so as to avoid the potential of taking unfair advantage of Gutierrez through Garcia's disclosure of privileged communications and other knowledge gained from representing Gutierrez; and (3) Garcia's violation of his duty to remain loyal to his former client and to guard against any action or betrayal of confidences and knowledge harmful to Gutierrez in the same case by

undertaking the representation of Martinez and thereby becoming a member of the prosecution team. *See Strickland*, 466 U.S. at 692 (citing *Cronic*, 466 U.S. at 658-59). Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. *See id.* (citing *Cronic*, 466 U.S. at 659 & n.25 (collecting cases)). For example, in this case, the cost of inquiry would include interrogation of the entire prosecution team with whom Garcia served in representing Martinez, the prosecution witness. The actions by the district court, the government, and Garcia were so  likely to interfere with the right of Gutierrez to subject the prosecution's case to "the crucible of meaningful adversarial testing," *Cronic*, 466 U.S. at 655, that they thereby violated his rights to a fair trial and effective assistance of counsel. Moreover, such circumstances involve impairments of Sixth Amendment rights and rights to a fair trial that are easy to identify and, for that reason and because the district court and the government are directly responsible, easy for them to prevent. *See Strickland*, 466 U.S. at 692.

The absolute rule that an attorney cannot be allowed to betray his client by switching sides in the same case has long been established as a fundamental requirement for our adversarial system of justice. *See, e.g.*, Penegar, *supra* note 1, at 838 ("[T]he proper administration of justice would soon cease if attorneys were permitted, after having received full, frank and free disclosures from clients, to go [to] the other side[.]") (alterations and footnotes omitted) (quoting EDWARD M. THORNTON, A TREATISE ON ATTORNEYS AT LAW § 177, at 315 (1914)); *accord, e.g.*, *Smiley v. Dir., Office of Workers Comp. Programs*, 984 F.2d 278, 282 (9th Cir. 1993); GEORGE SHARSWOOD, AN ESSAY ON PROFESSIONAL ETHICS 117-18 (4th ed. 1876); WEEKS, *supra* note 1, § 120, at 254-55 (allowing a attorney to switch sides "would be to defeat the very purpose

for which courts were organized, *viz.*, the administration of justice"). These principles are "fully applicable on an expanding rather than a contracting basis today." *People v. Curry*, 272 N.E.2d 669, 673 (Ill. App. Ct. 1971).[4] An attorney's continuing duties of loyalty and confidentiality are among "the oldest and soundest known to the common law [and] exist[ ] for the purpose of providing a client with assurances that he may disclose all relevant facts to his attorney safe from fear that his confidences will return to haunt him." *United States v. Green*, 18 C.M.R. 234, 237 (C.M.A. 1955). Even in civil cases, we have consistently recognized and enforced this rule. *See, e.g.*, *In re Am. Airlines, Inc.*, 972 F.2d 605, 618-19 (5th Cir. 1992).

While we previously have not had occasion to address the problem of a former criminal defense attorney's subsequent representation of a cooperating prosecution witness against his former client in the same case, *cf.* Penegar, *supra*, at 840 ("Perhaps because the core or paradigmatic problem of 'switching sides' was so intuitively obvious to . . . judges, advocates, and writers[,] . . . there was little need for any extended justification for remedies to deal with it."), those courts faced with similar situations have concluded without

---

[4] *See, e.g.*, MODEL RULES OF PROF'L CONDUCT R. 1.9 & cmt. 1 ("After termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest and thus may not represent another client" if it would violate either ongoing duty); TEX. DISC. R. PROF'L CONDUCT 1.09 & cmt. 4A ("[R]epresentation adverse to a former client is prohibited where the representation involved the same or a substantially related matter. . . . [T]his prohibition prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer[,] . . . even if the lawyer withdrew from the representation before the client had disclosed any confidential information."). *See generally In re ProEduc. Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) ("The Fifth Circuit has recognized the ABA Model Rules of Professional Conduct . . . as the national standards to consider in reviewing motions to disqualify. Therefore, [in cases applying Texas law] we . . . consider both the Texas Rules and the Model Rules.") (alteration omitted).

difficulty that the attorney's conduct created a presumption of prejudice warranting automatic reversal of the defendant's conviction, *see, e.g.*, *Green*, 18 C.M.R. at 240 (vacating conviction of defendant and finding prejudice *per se* of the defendant's rights when his attorney represented him during the pretrial investigation of his case and thereafter prepared a memorandum to the prosecution file that organized and objectively summarized the evidence against the defendant, which could then be relied upon by the prosecution); *United States v. Bryant*, 16 C.M.R. 747, 751-52 (A.B.R. 1954) (same, former attorney's objective sentencing memorandum); *Wilson v. State*, 16 Ind. 392, 394-96 (1861) (vacating conviction and declining to inquire into prejudice when former attorney assumed prosecutorial role in same case, explaining that allowing the conviction to stand would "defeat the very purpose for which the Court was organized, namely, the administration of justice"). These precedents, which across the board have vacated a defendant's criminal conviction obtained after the defendant's attorney switched sides to aid the prosecution, form a part of the category of Fifth and Sixth Amendment violations in which prejudice is presumed, and further inform the characteristics of that category. *See Strickland*, 466 U.S. at 692 (discussing constitutional violations caused by government "interference with counsel's assistance" or adversarial testing and involving "actual or constructive denial of the assistance of counsel altogether" and other violations that are "so likely [to prejudice the accused] that case-by-case inquiry into prejudice is not worth the cost") (citing *Cronic*, 466 U.S. at 659 & n.25 (collecting cases)).

Because of the fundamental errors by the district court, the prosecutor and Garcia himself in failing their duties to safeguard Gutierrez from the obvious prejudice of having his former attorney in the same case join with the

prosecution against him, this case falls within the first category of cases described in *Strickland* and *Cronic* as giving rise to presumed prejudice and requiring reversal.  For that reason, the majority errs by failing to consider and apply that first category of cases here and by only considering the second category of cases applying a "limited" presumption of prejudice when a defendant's trial counsel suffered from an "actual conflict of interest [that] adversely affected [the] lawyer's performance." *Strickland*, 466 U.S. at 692 (citing *Cuyler*, 446 U.S. at 348-49).  The inherent risk to a fair trial that a defendant suffers when his former defense attorney is appointed by the district court to switch sides, in the same case, to provide aid to the prosecution's efforts to convict the defendant, far overshadows the potential risk to a defendant whose counsel may have represented co-defendants with competing interests at trial, *cf., e.g., Cuyler*, 446 U.S. at 348-49 (describing the second category of cases), or whose counsel may have committed run-of-the-mill trial error, *cf. Strickland*, 466 U.S. at 693 (describing the third category of cases).  Moreover, unlike constitutional errors in the second and third categories of cases, the constitutional deprivation caused by Garcia himself was compounded by the fundamental error by the district court in appointing Garcia to represent Martinez after he represented the defendant in the same case and by the government in availing itself of Gutierrez's disadvantage.  The majority fails to acknowledge or distinguish the first category of cases in which the Supreme Court has instructed that prejudice must be presumed because prejudice to the defendant "is so likely that case-by-case inquiry into prejudice is not worth the cost" and, because the court and the prosecution were implicated in the deprivation of the defendant's constitutional rights, the error is "easy to identify and . . . easy . . . to prevent." *Strickland*, 466 U.S. at 692

(citing *Cronic*, 466 U.S. at 659 & n.25); *see Walberg*, 766 F.2d at 1075-76 (holding that *per se* prejudice applied, and that *Cuyler*'s limited presumption of prejudice was categorically inapplicable, when "the state is not a passive spectator of an inept defense, but a cause of the inept defense").

These errors, by their nature, are of the kind described by the first category of *Strickland* and therefore must be presumed to have deprived Gutierrez of his right to a fair trial and to have failed to require the prosecution's case to survive the crucible of meaningful adversarial testing. For these reasons, I conclude  that prejudice to Gutierrez by his defense attorney's switching sides in the same case must be presumed, requiring reversal of the district court's judgment and a remand with instructions to grant Gutierrez's motion for habeas relief.  Accordingly, I respectfully dissent.