## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 23 2020, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chad Malone,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 23, 2020

Court of Appeals Case No.
19A-PC-2207

Appeal from the Wayne Circuit Court

The Honorable David Kolger, Judge

Trial Court Cause No.
89C01-1404-PC-7

**Altice, Judge.**

## Case Summary

[1] Chad Malone appeals the denial of his petition for post-conviction relief, claiming that his trial counsel was ineffective on several grounds, including the alleged failure to interview witnesses prior to trial and failure to proffer a jury instruction on criminal recklessness, a lesser included offense of attempted murder. Malone also contends that he is entitled to relief because "an unconstitutional conflict of interest arose" when the deputy prosecutor who tried his attempted murder case declined to recuse herself because she had previously represented him as defense counsel in an unrelated marijuana case. *Appellant's Brief* at 33.

[2] We affirm.

## Facts and Procedural History

[3] In Malone's direct appeal, this court summarized the facts regarding his convictions on two counts of class A felony attempted murder, as follows:

> One afternoon in September 2011, Valerie Grubbs had a disagreement with Carey Parkhurst and Corey Groce. Valerie told Malone about it, and they drove around looking for Carey and [Groce]. They found the pair sitting in a gray sedan in the drive-through lane of a nearby McDonald's in Richmond. As [Grubbs] pulled her car alongside the sedan, Malone pulled out a

gun and fired six shots at Carey and [Groce]. [Grubbs] and Malone fled the scene.

Carey and [Groce] were treated for gunshot wounds at a local hospital. Carey had been shot in the chest and right arm. [Groce] had also been shot in the arm. [Groce's] wounds required surgery in which veins from his leg were used to repair veins in his arm. Both eventually recovered, though [Groce] has numbness in his arm and limited use of his hand.

*Malone v. State,* No. 89A01-1302-CR-71, *slip op. at 2* (Ind. Ct. App. Oct. 29, 2013). Following the shootings, the State charged Malone, who was twenty years old at the time, with two counts of attempted murder, a Class A felony.

[4] Several days after the shooting, Malone's mother, Tammy Tellas, agreed to be interviewed by a Richmond police detective. Tellas told the detective that she and Groce had been previously involved in a romantic relationship and had lived together at some point. She recounted an incident that had occurred several weeks earlier, where Groce burglarized her apartment, kicked in an air conditioning unit, and injured Malone's stepfather, Cairo Hardin.

[5] Malone was represented by three different public defenders while his case was pending. The trial court granted a total of six continuances prior to trial, and about two weeks before the trial was to commence, Malone retained attorney David Jordan (trial counsel) to represent him. Trial counsel immediately requested a continuance, stating that Malone's family had recently acquired funds to hire private counsel. The trial court denied this seventh request to

continue the trial and that same day, the State moved to amend the charging information against Malone as follows:

## COUNT I:

[O]n or about September 16th, 2011, in Wayne County, State of Indiana, Chad Malone did intentionally engage in a substantial step toward the commission of the criminal offense of Murder, to-wit: Chad Malone *intentionally attempted to kill* Corey Groce by discharging a firearm causing a bullet to strike Corey Groce about the body. . . .

## COUNT II:

[O]n or about September 16th, 2011, in Wayne County, State of Indiana, Chad Malone did intentionally engage in a substantial step toward the commission of the criminal offense of Murder, to-wit: Chad Malone *intentionally attempted to kill* Casey Parkhurst by discharging a firearm causing a bullet to strike Casey Parkhurst about the body. . . .

*Appellant's Appendix* at 102 (emphasis added). The original charging information did not include language that Malone "intentionally" attempted to kill the victims.

[6] Shortly after Malone retained trial counsel, Malone's public defender provided trial counsel with the case file that included nearly 200 exhibits, discovery materials, and a list of nearly forty witnesses, one of which was Tellas. Among those materials was a copy of the statement Tellas provided to the Richmond police detective. Trial counsel reviewed Tellas's statement and decided not to

investigate Tellas's allegations regarding the prior burglary and battery incident. Trial counsel believed that the State would likely consider those circumstances as Malone's motive and intent for shooting Groce. Trial counsel did not interview Tellas, Grubbs, or Hardin prior to trial.

[7] During the jury trial that commenced on December 11, 2012, the State called both Hardin and Grubbs to testify. Grubbs testified that on the day of the shooting, she and Malone were at an apartment building picking up some items. While Malone was in the apartment, Grubbs waited in the car and at some point, she saw Groce's vehicle approach and "almost side-swipe" her car. *Trial Transcript* at 610. Grubbs identified the occupants of the vehicle as Parkhurst and Groce. Grubbs testified that she exited her vehicle, threw up her arms and "start[ed] screaming [and] calling them names." *Id.* When Malone returned to the car, he got into the passenger seat and Grubbs then began chasing Groce.

[8] After noticing Groce's vehicle in a drive-through lane at a nearby McDonald's, Grubbs pulled up and stopped her vehicle. Malone immediately pulled out a gun and began shooting into Groce's car. Grubbs testified that she was aware of some "bad blood" between Groce and Malone. *Id.* at 611. At that point, trial counsel objected, and there was no further questioning regarding the existence of any feud between Malone and Groce.

[9] At the conclusion of the three-day trial, Malone was found guilty as charged. Thereafter, Malone was sentenced to thirty-five years on Count I and to forty

years on Count II, to be served consecutively, for an aggregate term of seventy-five years. The trial court identified several aggravating factors, including Malone's criminal history, and that the offenses had been committed in the presence of a minor. The trial court also noted that the nature and circumstances of the crime went beyond "the minimal conduct necessary to violate the applicable statutes," that Malone had violated a protective order when committing the underlying offenses, that Malone was in violation of probation and pretrial release, and that Malone had violated the terms of his bond by committing the underlying offenses. *See id.* at 872-79. The trial court rejected Malone's age as a mitigating factor and afforded minimal weight to Malone's troubled childhood as a mitigator. The trial court also concluded that Groce's alleged inducement or facilitation of the crimes was not a statutory mitigating circumstance.

[10] Malone appealed to this court, claiming that his sentence was inappropriate and that the trial court abused its discretion in denying his seventh motion for a continuance. We affirmed Malone's convictions and sentence in an unpublished memorandum decision on October 29, 2013.

[11] On April 23, 2018, Malone filed an amended petition for post-conviction relief, claiming that trial counsel was ineffective for failing to: (1) interview various witnesses prior to trial; (2) object to the State's amendments of the charging information; (3) proffer a jury instruction for criminal recklessness; (4) present adequate mitigating evidence at sentencing; and (5) object to an alleged conflict of interest concerning the deputy prosecutor who tried Malone's case.

[12] Following a hearing on May 15, 2019, the post-conviction court entered findings of fact and conclusions of law denying Malone's request for relief. It determined that trial counsel was well-prepared, employed reasonable strategies on Malone's behalf, and his decision not to object to the State's amended charging information was reasonable because the amendments merely clarified the State's burden of proof.

[13] The post-conviction court also noted that trial counsel had received all of the relevant documents and materials from Malone's previous attorneys, that Malone failed to show how an additional continuance would have benefited him, and that it was a reasonable strategy for trial counsel to proceed without requesting an instruction on the lesser-included offense of criminal recklessness. Moreover, it determined that trial counsel's decision to not focus on the contentious relationship between Malone and Groce was a reasonable strategy because the State likely would have used that circumstance as evidence of Malone's specific intent and motive to commit the offenses.

[14] The post-conviction court concluded that the deputy prosecutor had no duty to recuse herself from the attempted murder trial, inasmuch as her representation of Malone as defense counsel in the prior marijuana case was wholly unrelated to the attempted murder case, and the prior case was resolved two years before the attempted murder offenses. Finally, the court concluded that trial counsel was not ineffective for not investigating and presenting alleged mitigating evidence of "juvenile brain development," or offering evidence that Groce in

some way provoked the attack. *PCR Appendix Vol. II* at 147-48. Malone now

appeals.

# Discussion and Decision

## I. Standard of Review

[15] Our standard of review in post-conviction proceedings is well-settled:

> [P]ost-conviction proceedings do not grant a petitioner a 'super-appeal' but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Jent v. State*, 120 N.E.3d 290, 92-93 (Ind. Ct. App. 2019), *trans. denied* (quoting

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal citations

omitted), *trans. denied*).

## II. Ineffective Assistance of Counsel

[16] Malone argues that he is entitled to post-conviction relief because trial counsel

was ineffective for failing to: (a) interview and present witnesses; (b) object to

the State's amendment of the charging information; (c) proffer instructions on the lesser-included offense of criminal recklessness; (d) present exculpatory and mitigating evidence at sentencing; and (e) object to the deputy prosecutor's potential conflict of interest.

[17] The Sixth Amendment to the United States Constitution guarantees a person accused of a crime the "right to be represented by counsel." *United States v. Cronic*, 466 U.S. 648, 655 (1984). In ineffective assistance of counsel cases, reversal is appropriate where a defendant shows both that counsel's performance fell below an objective standard of reasonableness and that said deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Pennycuff v. State*, 745 N.E.2d 804, 811 (Ind. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. *Id*. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Id*. When considering ineffective assistance of counsel claims, we "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. (citing *Strickland*, 466 U.S. at 690). A claim that trial counsel was ineffective may be disposed of on the prejudice inquiry alone. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999); *Lee v. State,* 91 N.E.3d 978, 984 (Ind. Ct. App. 2017), *trans. denied*.

### *1. Potential Witnesses*

Malone argues that trial counsel was ineffective for failing to "do his groundwork" by not fully investigating and interviewing several potential witnesses prior to trial. *Appellant's Brief* at 20. More specifically, Malone claims that trial counsel's failure to interview the potential witnesses about the contentious relationship that he had with Groce prevented the discovery of evidence demonstrating that Groce was not merely an "innocent" victim. *Id.* at 16, 27.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that a particular investigation is unnecessary. *Ritchie v. State,* 875 N.E.2d 706, 719 (Ind. 2007). A "less than complete investigation" of a particular witness is not deficient performance if "reasonable professional judgments support the limitation on investigation." *Strickland*, 466 U.S. at 690-91. In those circumstances, the duty to investigate gives way to reasonable trial strategy. *See Wilkes v. State*, 984 N.E.2d 1236, 1244-45 (Ind. 2013). In reviewing counsel's trial performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 690); *see also McKnight v. State*, 1 N.E.3d 193, 201 (Ind. Ct. App. 2013).

In support of his claim, Malone directs us to the testimony of various witnesses at the post-conviction hearing, which suggests that Groce provoked Malone

because of the previous home invasion and physical assault against a member of Malone's family. Malone claims that Tellas would have testified that she and Groce had dated at some point, and that Groce had allegedly burglarized her residence and had stabbed her husband (Malone's stepfather) several months before the shootings.

[21] Trial counsel's defense strategy, however, focused on the lack of Malone's specific intent, in that his actions were not intended to cause either victim's death. That strategy negated the only material element of the offense that was seriously disputed. None of the incidents the witnesses were expected to describe directly involved Malone, and they had occurred weeks or months prior to the shootings. Moreover, there was nothing novel about this evidence that would have established a lack of specific intent on Malone's part. To the contrary, as the post-conviction court observed, such evidence could have provided the jury with a motive for the shootings, i.e., that Groce had previously dated Malone's mother, burglarized her home, and stabbed his stepfather.

[22] We also note that criminal charges relating to the shootings were pending against Grubbs at the time of Malone's trial.[1] Grubbs's testimony about Malone's contentious relationship with Groce could very well have prompted her to exercise her right against self-incrimination, thereby preventing that

---

[1] Grubbs admitted that she had provided the transportation to Malone for the purpose of shooting the victims.

evidence from being offered at trial. In fact, trial counsel successfully objected to the State's questioning of Grubbs when she was asked about the alleged ongoing feud between Malone and Groce. Moreover, as with the proposed testimony from Tellas, the admission of such testimony from Grubbs would have provided the jury with Malone's motive for shooting the victims and would have undermined trial counsel's lack of specific intent to kill defense.

[23] In sum, to focus on the contentious relationship between Groce and Malone would effectively have supported the State's theory of the case. Trial counsel chose a reasonable defense to try to negate the specific intent element of the charged offenses, and to that end, he made the strategic decision to not provide the jury with any evidence of motive. Thus, trial counsel exercised a sound trial strategy not to pursue further investigation and interview the potential witnesses identified by Malone. Thus, we reject Malone's claim that trial counsel was ineffective on this basis.

### 2. Continuance

[24] Malone argues that trial counsel was ineffective for failing to request a continuance after the State amended the charging information. Malone claims that the amendments affected his substantial rights and necessarily required additional time for trial counsel to adequately prepare for trial.

[25] The State correctly acknowledges that the purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Taylor v. State,* 840 N.E.2d 324, 330 (Ind.

2006).  If an issue was raised on direct appeal, but decided adversely to the petitioner, it is *res judicata,* thus precluding its review in post-conviction proceedings*.  Reed v. State,* 856 N.E.2d 1189, 1194 (Ind. 2006); *Trueblood v. State,* 715 N.E.2d 1242, 1248 (Ind. 1999).   In other words, the doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. *Sweeney v. State,* 704 N.E.2d 86, 94 (Ind. 1998).

[26]   We note that a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error.  *State v. Holmes,* 728 N.E.2d 164, 168 (Ind. 2000).  Thus, "where an issue, *although differently designated,* was previously considered and determined upon a criminal defendant's direct appeal, the State may defend against defendant's post-conviction relief petition on grounds of prior adjudication or *res judicata.*"  *Cambridge v. State,* 468 N.E.2d 1047, 1049 (Ind. 1984) (emphasis in original).

[27]   In this case, Malone argued on direct appeal that the trial court abused its discretion in denying his motion for a continuance "because he wished to be represented by private counsel."  *Slip op.* at 4.  At the  post-conviction level, Malone asserted that trial counsel was ineffective for failing to advance a proper argument for requesting the continuance, i.e., there was a substantive change to the charging information that would have allowed him to "properly investigate the case and develop the criminal recklessness theory."  *Appellant's Reply Brief* at 30-31.

[28]     Contrary to the State's contention, we do not view Malone's claim on post-conviction relief as using "different language" to rephrase an issue that was adversely decided on direct appeal. Thus, the doctrine of *res judicata* is inapplicable here, and we will address Malone's ineffective assistance of counsel claim. *See Reed,* 856 N.E.2d at 1195 (holding that the doctrine of *res judicata* did not bar the defendant's claim on post-conviction relief where, although a sentencing issue was raised on direct appeal, no argument was made that the defendant's sentence was improper because it was governed by the provisions of a specific statute that limits a court's authority to impose consecutive sentences in certain circumstances).

[29]     Ind. Code § 35-34-1-5 (d) provides that when the State amends a charging information, the trial court "shall upon motion by the defendant order any continuance of the proceeding which may be necessary to accord the defendant adequate opportunity to prepare his defense." The ultimate question is whether the defendant "had a reasonable opportunity to prepare for and defend against the charges." *Stafford v. State*, 890 N.E.2d 744, 752 (Ind. Ct. App. 2008).

[30]     In this case, the amendments removed language from the original charging information alleging that Malone "knowingly or intentionally" attempted to kill Groce and Parkhurst and replaced it with language alleging that Malone "intentionally attempted to kill" Groce and Parkhurst. *Appendix* at 16, 102. In accordance with *Spradlin v. State*, specific intent to kill is an essential element of the crime of attempted murder. 569 N.E.2d 948, 951 (Ind. 1991). Hence, the State's amendments merely replaced an incorrect *mens rea* element with the

correct one. Additionally, the amendments added no charges against Malone, they did not alter the time, date, or location of the alleged offenses, and the identities of the victims were not changed. In short, the amendments were non-substantive changes to the charging information that did not affect any of Malone's substantial rights.

[31] There was also no testimony from trial counsel at the post-conviction hearing suggesting that he had relied on the State's initial erroneously-charged *mens rea* while formulating Malone's defense. To the contrary, trial counsel possessed all the evidence necessary to proceed with his chosen defense, even after the amendments. Thus, Malone would not have been entitled to a continuance, even had trial counsel requested one.

[32] For all of these reasons, we conclude that Malone has failed to demonstrate that trial counsel was ineffective on this basis.

### 3. Lesser Included Offense Instructions

[33] Malone argues that trial counsel was ineffective for failing to proffer instructions on the lesser included offense of criminal recklessness. Malone claims that there was no strategic reason for not requesting such an instruction and the "all or nothing defense made no sense" under these circumstances. He maintains that the jury should have been given the option to find him guilty of criminal recklessness.

[34] The offense of murder is committed when "[a] person . . . knowingly or intentionally kills another human being." Ind. Code § 35-42-1-1. An individual attempts to commit murder when he, "acting with the culpability required for the commission of the crime," engages "in conduct that constitutes a substantial step toward the commission" of murder. Ind. Code § 35-41-5-1(a).

I.C. § 35-42-2-2 provides that criminal recklessness is committed when a defendant "recklessly, knowingly or intentionally . . . inflicts serious bodily injury on another person." A person engages in conduct "recklessly" if he "engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I. C. § 35-41-2-2(c).

[35] At the post-conviction hearing, the evidence established that Malone's trial counsel considered offering a criminal recklessness instruction but ultimately decided against doing so. Trial counsel was concerned that such an instruction would likely prompt the State to offer its own instructions for Class B felony battery. Hence, trial counsel believed that convicting Malone of a Class B felony offense would have "been a promising way to ensure that convictions and sentences on Class B felonies would have [likely] . . . ensure[d] that [Malone] was going to get a boat load of time with convictions on some lesser includeds." *PCR Transcript* at 175. Counsel also believed that "there was . . . overwhelming evidence that [Malone] committed the B felony, so [he] didn't want them in because I liked where we were at . . . the time the jury got the case." *Id.* at 177-78.

[36] Although Malone asserts that his trial counsel's "all-or-nothing strategy" regarding jury instructions was unreasonable because the jury may have been persuaded to convict him of a lesser alternative to a Class A felony, this is precisely the type of critical evaluation of counsel's performance that is not permitted. *See Premo v. Moore*, 562 U.S. 115, 125 (2011) (observing that *Strickland* does not permit counsel's performance to be evaluated with the benefit of hindsight). As our Supreme Court commented in *Page,* "[i]t is not sound policy for this Court to second-guess an attorney through the distortions of hindsight." 615 N.E.2d at 896. Hence, trial counsel's pursuit of an acquittal in this case, rather than taking the chance of a conviction for a serious felony, was a reasonable strategic choice at the time. Thus, we cannot say that trial counsel's decision to not pursue an instruction on lesser-included offenses amounted to ineffective assistance of counsel.

### 4. Alleged Mitigating Evidence

[37] Malone next claims that trial counsel was ineffective because Groce's provocation of the ongoing dispute with Malone should have been presented as mitigating evidence at sentencing. Malone further contends that trial counsel should have presented evidence that juvenile offenders have reduced culpability for their actions because of their "attendant lack of wisdom and discernment." *Appellant's Brief* at 29.

[38] The right to effective counsel imposes an obligation on defense attorneys to investigate and present mitigating factors at sentencing that may reduce a

defendant's overall sentence. *Gibson v. State*, 133 N.E.3d 673, 689 (Ind. 2019). The rule in *Strickland,* however, has never been construed to require counsel to investigate "every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (citing *Strickland*, 466 U.S. at 689). As in all matters of trial strategy, counsel's decision not to investigate certain mitigating evidence is entitled to broad judicial deference. *See Gibson*, 133 N.E.3d at 689. Thus, a question of whether counsel performed deficiently in preparing for a defendant's sentencing hearing hinges on whether the investigation supporting counsel's penalty-phase strategy was reasonable, and "not whether counsel should have presented more in mitigation." *Ritchie,* 875 N.E.2d at 719.

[39] Malone suggests that the ongoing feud with Groce supported a mitigating circumstance that the victim "induced or facilitated the offense," under Ind. Code § 35-38-1-7.1(b)(3). Although trial counsel testified at the post-conviction hearing that he did not explore the issue of the victim and Malone's prior relationship, there was no evidence that Groce posed an immediate threat to Malone or to any of Malone's family members, or that Groce did anything else to provoke the incident. Hence, we cannot say that trial counsel was ineffective in not offering evidence at sentencing that Groce may have induced or facilitated the commission of the offense.

[40] Malone also contends that trial counsel was ineffective for failing to present scientific evidence or properly argue relevant case law at the sentencing hearing regarding a juvenile offender's lack of brain development "and [his or her]

attendant lack of wisdom and discernment." *Appellant's Brief* at 29. Malone asserts that the trial court could have considered such evidence as a mitigating factor that may have resulted in a reduced sentence.

[41] We initially observe that an argument at sentencing "focusing on chronological age is a common shorthand for measuring culpability, but for people in their teens and early twenties it is frequently not the end of the inquiry." *Ellis v. State*, 736 N.E.2d 731, 736 (Ind. 2000). Indeed, there are "relatively old offenders who seem clueless and relatively young ones who appear hardened." *Id.* A finding of age as a mitigating circumstance is an individualized determination that turns on the facts of a particular case and is subject to the trial court's broad sentencing discretion, particularly when it is being advanced for an offender who is no longer legally a juvenile. *Johnson v. State*, 725 N.E.2d 864, 868 (Ind. 2000).

[42] Malone directs us to *Miller v. Alabama,* 567 U.S. 460 (2012), where it was held that mandatory life imprisonment without parole sentences for juvenile offenders under eighteen years of age are categorically unconstitutional. The *Miller* Court determined that sentencing courts must "take into account how children are different" based on a number of developmental factors, like "immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 477-79; *see also Taylor v. State,* 86 N.E.3d 157, 166 (Ind. 2017) (where our Supreme Court, in reviewing the seventeen-year-old defendant's life without parole sentence, observed that children lack maturity, are vulnerable to negative influences and pressures, and are less likely to show "irretrievable depravity").

This rule, however, applies to the sentencing of "children," not adults, and nothing in the *Miller* rationale addresses sentencing offenders who are over the age of eighteen at the time their offenses are committed.

[43] Two additional cases, *Roper v. Simmons*, 543 U.S. 551, 569 (2005), and *Graham v. Florida*, 560 U.S. 48, 68 (2011), discuss various scientific studies concerning the cognitive development of adolescent youth. In neither of those cases did the Court set forth firm rules as to how such evidence should be considered for mitigation purposes in criminal proceedings. Moreover, the limited holdings and rationales advanced in *Miller, Roper,* and *Graham*, have no obvious applicability in Malone's case, given that Malone was nearly twenty-one years old when he committed the charged offenses.

[44] Even so, the trial court had substantial information before it at the sentencing hearing showing Malone's developmental state and culpability. Specifically, the psychological evaluation that assessed Malone's competency to stand trial was attached to the presentence investigation report. During the evaluation, Malone told the interviewer that when he noticed Groce, "I'm shooting 'em. I could've killed him. I wanted to scare them." *Pre-sentence Report* at 24. When Malone was asked if he knew he could face legal consequences for his behavior, he stated, "I didn't care," and attempted to blame his behavior, at least in part, on his substance abuse. *Id.* Malone further stated that, after the shooting, he fled the scene and absconded to Indianapolis, where he remained until he surrendered to police.

In sum, there is no evidence suggesting that Malone had diminished culpability and that his actions were directly traceable to his youth. Simply put, there was no compelling reason for the trial court to conclude that Malone's age was a significant mitigator that warranted a lesser sentence. Hence, defense counsel's lack of argument pursuant to *Miller*, *Graham*, and *Roper* was reasonable and, therefore, did not constitute the ineffective assistance of counsel.

### 5. *Conflict of Interest*

Malone next argues that he is entitled to post-conviction relief because trial counsel did not object to the deputy prosecutor's potential conflict of interest in this case, inasmuch as the record shows that she had represented Malone as defense counsel in an unrelated criminal case two years before the instant offenses occurred.

To establish that counsel performed deficiently by failing to raise an objection at trial, the defendant must show that had defense counsel made the objection, the trial court "would have had no choice but to sustain it." *Taylor v. State*, 689 N.E.2d 699, 705 (Ind. 1997); *Kimbrough v. State*, 911 N.E.2d 621, 640 (Ind. Ct. App. 2009). As for instances relating to conflicts of interest in criminal settings, our Supreme Court has held that

> [A] lawyer must be disqualified if it is shown that the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client. The test must be applied to the facts of each case to determine whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith.

*Johnson v. State*, 675 N.E.2d 678, 682 (Ind. 1996). Additionally, this court has determined that "[a]n actual conflict of interest arises where a prosecutor places himself in a situation inherently conducive to dividing his loyalties between his duties to the State and his personal interests." *Swallow v. State*, 19 N.E.3d 396, 399 (Ind. Ct. App. 2014). The primary concern in this analysis is "whether the prosecuting attorney gained any confidential information through their prior association" with a defendant and whether that information subsequently "provided assistance to the prosecution." *Johnson*, 675 N.E.2d at 682.

[48]     In this case, it is undisputed that the deputy prosecutor in the attempted murder case had previously represented Malone in a prior unrelated marijuana possession case. Malone has not established any link or connection between the two different criminal prosecutions. Moreover, both Malone and trial counsel acknowledged at the post-conviction relief hearing that no confidential information obtained from the prosecution of the marijuana case was ever placed before the jury during the attempted murder trial, and there was no allegation that the deputy prosecutor learned anything in the prior case that aided her prosecution of Malone for the instant offenses. Hence, there was no basis for her recusal, and the trial court would not have sustained trial counsel's objection on the grounds that a conflict of interest existed, even if one had been made. Therefore, Malone's claim of ineffective assistance of counsel on this basis, fails.

[49]     Judgment affirmed.

Bailey, J. and Crone, J., concur.